WHITTENTON MANUF'G CO. *v.* MEMPHIS & OHIO RIVER PACKET CO.
. and others.

*(Circuit Court, W. D. Tennessee.   October 22, 1884.)*

1. COMMON CARRIER—NEGLIGENCE—FORM OF ACTION—CONTRACT AND TORT—
   PLEADING.
      The plaintiff has an election to sue in contract or tort for damages by negligence of the carrier, and the distinctive character of the declaration depends upon the requisite nature of the remedy to which he is entitled on the facts he states, rather than on the mere form of the declaration, though that cannot be wholly disregarded in determining whether he has elected the one cause of action or the other. Tort is the natural and habitual foundation of the action for the breach of the ordinary contract of carriage, and the declaration will be so construed, unless the facts of the case clearly show that the plaintiff has elected to sue on the contract.

2. SAME SUBJECT—BILL OF LADING—PROFERT—TENN. CODE, § 2893—ACT OF
   1819, CH. 27, § 2.
      The Tennessee Code, § 2893, perpetuating the act of 1819, c. 27, § 2, and enacting that the plaintiff shall make profert of any instrument in writing "upon

which the action is founded," does not require profert of a bill of lading stated in the declaration as one of "the facts of the case," if it appears that the plaintiff has not clearly elected to sue on the contract contained in the bill of lading.

**2.** SAME SUBJECT—CASE IN JUDGMENT.

Where the declaration was joint against the party signing the bill of lading and another not signing it, avers an "agreement" disconnected with the bill of lading not alleged to be in writing, states the bill of lading as an inducement to the cause of action, does not make profert of it, and the breaches assigned seem to be of the joint "agreement," and not of the contract contained in the bill of lading, the declaration will not be construed as "founded on" the bill of lading.

## On Demurrer.

The plaintiff sued the defendants for damages to about 1,000 bales of cotton, alleged to have been caused by their negligence. The third count of the declaration to which the demurrer—quoted in the opinion of the court—was taken is as follows:

"*Third.* And the plaintiff, the Whittenton Manufacturing Company, a corporation and a citizen, as aforesaid, complains of the defendants, the Memphis & Ohio River Packet Company and the Merchants' Cotton Press & Storage Company, corporation and citizen, as aforesaid, for that, on, to-wit, the various dates stated below, the plaintiff, through E. Hobart & Co., their agents, purchased in Memphis, Tennessee, of divers persons, the owners thereof, to-wit, 1,002 bales of cotton, as follows, [giving dates and number of bales,] to be shipped to the plaintiff at Taunton, Massachusetts, and there delivered to it. At the dates of the said several purchases of the said cotton the same was in lots and in the custody of the several vendors or their warehousemen in the city of Memphis, and the several lots thereof, before removal, were examined, sampled, weighed, and classed, and ship-marked on behalf of plaintiff, and were found to be in good order and condition, and to correspond with the samples; and thereupon, by agreement, embracing each and all the transactions—to be stated below—between the plaintiff, through its agents, E. Hobart & Co., on the one side, and the said Mammoth Cotton Compress Company and the Union Cotton Compress Association and the defendant, the Memphis & Ohio River Packet Company, jointly and severally, on the other, each lot of said cotton, as received by the plaintiff from the vendors, was delivered in like good order and condition to the said Mammoth Cotton Compress Company and the Union Cotton Compress Association, or one of them, who received the same under the said agreement, to be by them, as was also agreed, as aforesaid, compressed and prepared for shipment for certain compensation to be paid, as was agreed, as aforesaid, and thereupon, as was also agreed, as aforesaid, through the defendant, the Memphis & Ohio River Packet Company, then to be safely transported from Memphis, Tennessee, to Taunton, Massachusetts, for certain other compensation, agreed, as aforesaid, to be paid. Each lot of the said cotton was delivered in pursuance of the agreement aforesaid, and when so delivered was receipted for as in good order and condition, and by the agreement first herein alleged, was to be kept by the said defendants, each and all, in like good order and condition during the compressing and preparation for shipment and during the transportation, and until the delivery at Taunton, Massachusetts, as aforesaid, and until delivery to the plaintiff. After the said 1,002 bales of cotton had been so received to be compressed and prepared for shipment, and had been receipted for as aforesaid, all which was done in pursuance of the agreement aforesaid, the defendant, the Memphis & Ohio River Packet Company, still pursuing the said agreement first made, delivered the plaintiff, through its agents, E. Hobart & Co., its three several bills of lading, whereby the re-

ceipt of the cotton was acknowledged, and it was stated that the said cotton was in good order and condition, and whereby it was agreed that for certain compensation stated it would transfer and deliver the said cotton in like good order and condition at Taunton, Massachusetts. The said bills of lading bear date, respectively, December 13, 1879, for 200 bales; December 19, 1879, for 500 bales; and December 29, 1879, for 302 bales.

"The defendants did not ship the said cotton promptly and speedily, as was their duty under the joint and several agreement, aforesaid, but neglected to do so, and, disregarding their contract and their duty, shipped the same about as follows, to-wit: On December 17, 1879, 174 bales by the steam-boat Cons. Miller; on December 20, 1879, 14 bales by the steam-boat Andy Baum; on December 23, 1879, 512 bales by the steam-boat Vint. Shinkle; on December 30, 1879, 302 bales by the steam-boat Virgie Lee. The defendants wholly failed to care for and properly protect the said cotton according to their joint and several agreement, aforesaid, but so negligently and carelessly conducted themselves with respect to it while it was in their possession under the agreement, aforesaid, and was being compressed and prepared for shipment, and while it was being shipped, and while it was being transported, that a large part of it, to-wit, 920 bales, by reason of such carelessness and negligence, were greatly damaged and injured, to-wit, by exposure to rain and snow, and by being brought in contact with mud and filth, so that when the same was delivered to the plaintiff at Taunton, Massachusetts, it was not in good order and condition, but had been greatly injured and damaged and depreciated in value, to-wit, to the amount of five thousand dollars. And afterwards, to-wit, on July 1, 1880, the said Mammoth Cotton Compress Company and the Union Cotton Compress Association became the Merchants' Cotton Press & Storage Company, one of the defendants here, which succeeded and became chargeable with and promised to pay all their debts and liabilities, respectively, all as hereinbefore alleged. And therefore the plaintiff sues the defendants for six thousand dollars damages."

*W. M. Randolph*, for plaintiff.

*H. C. Warinner*, for defendants.

HAMMOND, J. When this case was before the court at a former day on a motion to replead, the motion was granted. *Whittenton Manuf'g Co.* v. *Memphis & Ohio River Packet Co.* 19 FED. REP. 273. To the declaration then filed the defendants demurred on several grounds, all of which have been cured by amendment, except one. This is: "*Second,* because said count does not make profert of the bill of lading alleged to have been executed by defendant." The law of Tennessee on the subject of "profert" is peculiar. The Code enacts: "Profert shall be required as heretofore, and a demurrer may be filed for want thereof." Tenn. Code, (T. &. S.,) § 2893. This means that the act of 1819, c. 27, § 2, (Car. & Nich. 551,) was continued in force. It enacts: "In all cases   *   *   *   the plaintiff shall be compelled to produce any instrument of writing, not under seal, within the power of the party to produce, upon which his, her, or their action is founded;   *   *   *   and, if the cause is pending in a court of record at the return term, make profert of the same in his, her, or their declaration, unless longer time is given."

Now, at common law, profert being required only of sealed instruments "under which the party claimed title," it became settled under

this act that its only effect was to put unsealed instruments upon which the "action is founded" upon the same footing as profert of sealed instruments at common law. Tenn. Code, § 2893, and notes. *Gardner* v. *Henry*, 5 Cold. 458; 3 Meigs, Dig. (2d Ed.) 2184. At common law a deed stated merely as an inducement in pleading did not require profert. 1 Chit. Pl. 265; Gould, Pl. 414; Bouv. Dict. tit. "Profert;" *Banfield* v. *Leigh*, 8 Term R. 573. It is not necessary, for example, in a suit upon a bond, to make profert of a deed for the performance of the covenants of which the bond was given. *Sneed* v. *Wister*, 8 Wheat. 690. Nor in a suit upon coupons is it necessary to make profert of the bond from which the coupons were taken. *Nashville* v. *Bank*, 1 Baxt. 402; *Nashville* v. *Insurance Co.* 2 Baxt. 296.

Mr. Schouler, in his excellent work on "Bailments," says of the form of action against a carrier that it may be *ex delicto* or *ex contractu* at the election of the plaintiff. And, "where the transaction and character of the loss require the plaintiff to show a contract, express or implied, with the carrier, to support his action, contract is the true remedy; otherwise the preferable form of action is tort." Schouler, Bailm. 557; 2 Add. Torts, § 1415; 2 Bac. Abr. tit. "Carriers," B, 152. The action *ex delicto* is for a breach of duty founded on the custom of the realm, and it makes no difference that there is a contract by the carrier out of which the duty arises, unless there is something special in the contract upon which the plaintiff must rely for his action, in which case his suit necessarily must be *ex contractu*. In the ordinary contract the plaintiff has his choice as to the form of action he will use; and where the action is *ex delicto* the carrier may plead in defense any stipulations of a contract which has relieved him from the alleged breach of duty. Schouler, Bailm. 575; Hutch. Carr. § 748.

In *New Jersey Nav. Co.* v. *Merchant's Bank*, 6 How. 344, 381, the court say: "The general liability of the carrier, independently of any special agreement, is familiar. He is chargeable as an insurer of the goods, and accountable for any damage or loss that may happen to them in the course of conveyance, unless arising from inevitable accident," etc. Again, "the burden of proof lies on the carrier, and nothing short of an express stipulation by parol or in writing should be permitted to discharge him from duties which the law has annexed to his employment."

Mr. Hutchinson, in his able work, also discusses this subject, and states the difficulties, even under the old practice, of determining the proper form of action to be brought, and, when brought, whether it be one or the other of the two forms allowable. He says that until *Dale* v. *Hall*, 1 Wils. 281, the form of action was *ex delicto*, and that case decided that, even where it is on the contract, the declaration is the same in effect as if it had been upon the custom. Hutch. Carr. § 737 *et seq.* He calls attention to the perplexities formerly existing in

distinguishing one form of action from the other, and says: "The declarations of the two kinds of actions, according to approved formulas, were so nearly alike, that in many cases the astutest judges became perplexed in their efforts to find out to which class the declaration belonged." Id. § 744 *et seq.*

In the case already cited from the supreme court, Mr. Justice DANIEL,. in his dissenting opinion, considers more at large than does the opinion of the court, the distinctions between the action against a carrier *ex delicto* and *ex contractu.* So do the concurring Justices CATRON and WOODBURY, and the general result of that very instructive case on this subject is that, notwithstanding. there was in that case, yet, in a large sense, a suit founded upon a special contract of carriage, in the very nature of the action it was such that, essentially, whatever its form, it was *"founded in tort,"* and would, therefore, support the jurisdiction of the admiralty. The majority opinion thought the jurisdiction existed even if "founded on the contract," but the two concurring justices above named preferred to rest it on the foundation of. tort. *New Jersey Nav. Co.* v. *Merchants' Bank,* 6 How. 344, 394, 410, 427. I forbear to quote much of these opinions that would be applicable here, and refer to another .case where the same rules of discrimination there adopted were .applied in testing the form of action, but with an inverse result.

In *Bryant* v. *Herbert,* 3 C. P. Div. 189, the question was whether the, action of *detinue* is "founded on contract" or "founded on tort," and as one ground of the judgment it was held that although in form the action is one for a wrong done, in theory it is founded on a contract, and not on a wrong independently of contract. These two cases establish that in solving a question like this we are to look to the requisite nature of the remedy the plaintiff is entitled to on the facts he states, rather than any form his declaration may assume, though, of course, we cannot wholly disregard the form of the declaration.

Now, if this matter was before one of so much difficulty, there has been only an increase of it since our statutes abolished all forms of action. Like the distinctions between law and equity, it may be doubtful if it is possible to wholly obliterate those between contract and tort, they do so inhere in the very bone and flesh of our law; and certainly the legislators have not always furnished us with a legislative substitute for those which they have destroyed, nor yet have they destroyed the whole, as this case well illustrates. Perhaps ours did not think, when they required profert of any instrument of writing upon which "the action is founded," how the statute abolishing all forms of action had removed the surest guide we had,—the *indicia* of the common-law forms, namely,—to discover whether a plaintiff, when he brings his suit, *elects* to bring it on the bill of lading, or on "the custom of the realm;" for, after all, in a case like this, we are searching for that election, pure and simple, and nothing else. Perhaps in some cases the pleader does not know or care, and in fact

makes no election whatever, since he may do either, or both, or neither, under our Code.   Thus:

"Whenever the facts of the case entitle the plaintiff to sue for a breach of contract, or, at his election, for the wrong and injury, he may join statements of his cause of action in both forms, or either."   And "all wrongs and injuries to the property and person in which money only is demanded as damages may be redressed by an action *on the facts of the case.*"   Tenn. Code, §§ 2747, 2748, 2884, 2894, 2896.

Besides, the Code gives us a form of declaration "against a common carrier," as follows:

"The plaintiff sues the defendant for ——— dollars as damages for the failure to deliver certain goods in good condition, viz., [describing them,] received by him as a common carrier, to be delivered to the plaintiff at ———, for a reward, which he delivered damaged."   Tenn. Code, § 2939, No. 13; Caruth. Hist. Suit, 146.

The plaintiff here does not use this form, which makes no profert of any bill of lading, or refers to any contract, but sues on "*the facts of the case.*"   How is it possible under this legislation for the "astutest judges" to tell whether the action is on the contract or the wrong; or, rather, whether the pleader uses the one or the other, or both, in his wholly informal count "on the facts?"   It is not, and the best that can be done is to take the plaintiff's word for it; and when his counsel says in his argument and brief that he sues in tort, to hold him to that form of action and its consequences.   Fortunately, however, we are not left wholly to this solution of the difficulty.   It has been decided that the averment of a promise does not make the declaration one in contract, nor the use of the words "agreed," "undertook," or "promised."   Hutch. Carr. 744; *Smith* v. *Seward*, 3 Pa. St. 342; *Corbett* v. *Packington*, 6 Barn. & C. (13 E. C. L.) 268.   These cases say the averment must be one of a promise, and a consideration for it, to make it a count on contract; but there may be an averment of a consideration or compensation for assuming the duty imposed by law, or a consideration connected with a contract pleaded only as an inducement.   All the cases show this, unless the consideration averred is for a promise to do something beyond the common-law duty, as was the fact in the case last cited.

Here there is no averment of a contract beyond the common-law duty as contained in the bill of lading or consideration for such a promise.   They have also abolished forms of action in England, and have a statute analogous to this, giving costs only on certain conditions when the action is "founded on contract," and only on certain other conditions when it is "founded in tort."   In a series of cases under that statute the question whether in a given declaration the plaintiff has elected to sue on contract or tort has been gone over, with some conflict of opinion.   While they leave the matter still in doubt, and evidently, as Mr. Schouler says, indicate a desire to narrow the plaintiff's election, if possible, they come at last to the rule already indicated in the decision I have cited from the supreme court

of the United States in determining the admiralty jurisdiction, and suggested by Mr. Hutchinson, that the innate and habitual form of action on the ordinary contract for carriage, for a breach of the duty to keep the goods safely without loss by negligence, is "founded in tort," and the declaration will be so construed unless the special features of the case show it to have been "founded in contract." Schouler, Bailm. 558, note 1; Hutch. Carr. §§ 747, 748, 749; *Tattan* v. *Great Western R. Co.* 2 El. & El. (105 E. C. L.) 844; *Baylis* v. *Lintott*, 8 C. P. 345; *Pontifex* v. *Midland R. Co.* 3 Q. B. Div. 23; *Fleming* v. *Manchester, etc. Ry. Co.* 4 Q. B. Div. 81; *Bryant* v. *Herbert*, 3 C. P. Div. 189; *Foulkes* v. *Metropolitan Ry. Co.* 4 C. P. Div. 267, 278; 2 Chit. Pl. 651, 667; Oliv. Prec. 371.

Examined in the light of these authorities, this declaration must be taken to have expressed the election of the plaintiff to bring an action "founded in tort," and therefore not to be an "action founded" upon the bill of lading. Because (1) it is a joint action against the demurrant, and other defendants who are not alleged to have joined in the bill of lading. (2) The plaintiff does not make profert of the bill of lading; and, if this should seem to beg the question, it should be remembered that our inquiry is a peculiar one in this connection, being limited to determining whether the plaintiff has, *in fact*, elected to sue in tort, or on the contract contained in the instrument; therefore, we may look to this want of profert as a circumstance to show his state of mind. Hutch. Carr. § 749, last clause. (3) The count seems to aver an agreement not alleged to be in writing,—whether as an inducement or otherwise is immaterial, since it is not within the statute requiring profert,—disconnected with the bill of lading. *Carroway* v. *Anderson*, 1 Humph. 61. (4) The allegations about the bill of lading seem to be made by way of inducement to the general cause of action, and not as to the foundation of it. (5) The breaches alleged seem to be of a joint "agreement," other than that of the demurrant by the bill of lading. (6) Naturally, the action would be in tort rather than contract. Hutch. Carr. §§ 747, 748.

Moreover, the plaintiff, by resisting this demurrer, and not amending to offer profert, as it might at will, indicates an election to proceed in tort, and not upon the bill of lading. Inferentially, this count "on the facts" was drawn with that intent; but if it was not so drawn, in fact, I know of no rule of law, presented as this question is here presented, and within the narrow limits prescribed by the inquiry we are making, why the plaintiff might not now or at the trial elect to proceed in tort. If it had sued in contract and made profert, it might amend and proceed in tort; and why may it not so treat an ambiguous declaration, if this be of that character?

Demurrer overruled.