GULF & INTERSTATE RAILWAY COMPANY OF TEXAS v. TEXAS & NEW ORLEANS RAILWAY COMPANY.

No. 885. Decided April 2, 1900.

**1. Railways—Connecting Lines—Transfers.**

Article 4535 of Revised Statutes, requiring railways to receive and transport freight coming to and from connecting lines, does not require that one company perform the work of switching and transferring freight between two other lines at a given point, though its tracks and switches there furnish a connection affording means for such transfer. (P. 486.)

**2. Same—Refusal to Switch Cars—Penalty.**

A railway company whose tracks and switches formed the means of connection between the lines of two other companies, at a town reached by both was not liable to the penalty provided by Revised Statutes, article 4535, for refusing to make transfer, over its tracks and switches, between such other lines, of cars routed over them but not over its own line,—the statute being inapplicable to such service. (Pp. 484-486.)

ERROR to the Court of Civil Appeals for the First District, in an appeal from Jefferson County.

*O'Brien, Bordages & O'Brien,* for plaintiff in error [from argument in support of a motion for rehearing].—The court erred in its fourth paragraph in basing the correctness of the judgment of the Court of Civil Appeals solely upon the construction of article 4535, Revised Statutes, as quoted in said opinion; for the Legislature of the State of Texas has spoken and enacted more than is contained in said article pertinent to and explanatory of this issue, in other articles, to wit, in article 4536, which we submit, as well as articles 4537 and 4538, should have been considered by the court.

And in this connection it is to be further observed that article 4537 more generally enacted that "every railroad or person or corporation operating a railway for the carriage of freight * * * in this State

shall receive freight   *   *   *   for transportation to or into this State, or through any part thereof, from every other connecting railway, upon the same terms and conditions as to the division of charges for carrying and transporting the same, upon a mileage or any other basis, and upon terms and conditions as to bills of lading and way, that any such person or corporation or transportation line may receive, or contract to receive, from any other person or corporation engaged in like business in this State." And the court's attention is also called to the following article, 4538, wherein is provided ample and absolute security to any creditor railroad company thus interchanging business, for any moneys due it for transportation or carriage of freights, thus by statute made compulsory, without the precautionary rules and methods of the common law theretofore existing as security against loss.

We submit that in the construction to be given to any of the words of these articles or statutes, in respect to railroads, there seems to be neither necessity nor excuse for going outside their ordinary signification, or to search for any meaning which might be given them by railroad experts; for the Legislature, in making the law, used words easily understood by any one familiar with the English language and the ordinary signification of its words, and did not use any such as should be interpreted only by railroad experts, or be in anywise by them controlled in their construction or application.

*Baker, Botts, Baker & Lovett,* and *Votaw, Martin & Chester,* for defendants in error.—Can a railway company, although a connecting carrier, be compelled under the Revised Statutes, article 4535, et seq., to receive cars of freight destined to points on its own line when by the terms of receipt of such cars it is required to deliver them before they reach their destination to another railway company to be hauled by the latter to the point of destination?

Article 4535, Revised Statutes, in so far as this question is concerned, provides: "All railway companies doing business in this State shall be and they are hereby required to receive from all other railway companies with which they may connect   *   *   *   all freights and passengers coming to it from such line,   *   *   *   and shall transport the same   *   *   *   to destination, if on its line, or to the next connecting or cross line   *   *   *   if beyond its line   *   .   *   *   ." It is, we think, obvious by the provisions of this statute that a railway company that is a connecting carrier has the legal right when it receives freight from another connecting carrier to haul it to the point of destination, if on its line; and that if the freight tendered should be tendered only upon condition that it be delivered to another carrier before it reached its destination, the carrier to whom the tender is made may lawfully refuse to accept the freight. Rev. Stats., arts. 4535, 4536; Gen. Laws, Acts 1895, ch. 121, sec. 1, p. 186; Railway v. Railway, 110 U. S., 667; 16 Am. and Eng. Ry. Cases, 67. Coles v. Railway, 45 Am. and Eng. Ry. Cases, 328; 2 Rapalje & Macks Dig. of Ry. Law, p. 200; Rhodes v. Rail-

way, 21 Am. and Eng. Ry. Cases, 31.; Railway v. Commercial Guano Co., 30 S. E. Rep., 555, 12 Am. and Eng. Ry. Cases (N. S.), 848; Railway v. Exposition Cotton Mills, 81 Ga., 522; Railway v. Young, 25 Neb., 651; Hooper v. Railway, 27 Wis., 90.

BROWN, Associate Justice.—The Texas & New Orleans Railroad runs east and west, through or near to the city of Beaumont, and the Sabine & East Texas Railroad, running north and south, passes through the said city.    Both of the said lines of railroad were under the management and control of the Southern Pacific Railroad Company.

The Gulf, Beaumont & Kansas City Railroad extends from Kirbyville southward to the city of Beaumont, and near to the Texas & New Orleans Railroad it connects by a switch with the Sabine & East Texas Railroad.    The Gulf & Interstate Railroad extends from Bolivar Point northward to the city of Beaumont, to a point south of the Texas & New Orleans Railroad, and, by switches, is connected with that line of railroad.    The facts with regard to the connection of these roads at the city of Beaumont are complicated, and, in our view of the case, it is unnecessary to state them in detail; but, for the purposes of this decision, we will assume that all of these roads connect at that point within the meaning of the statute.

A number of persons delivered at Kirbyville to the Gulf, Beaumont & Kansas City Railroad, freights which were routed over that railroad to Beaumont, thence over the Gulf & Interstate road to Galveston, but the bills of lading called only for the Gulf, Beaumont & Kansas City road to Beaumont.    The Gulf & Interstate Railroad and the Gulf, Beaumont & Kansas City Railroad had a joint agent at Beaumont, and, through him, the freights were tendered in cars to the joint agent of the Texas & New Orleans and the Sabine & East Texas railroads, to be transferred by them over their switches and main lines, to their connection with the Gulf & Interstate Railroad; and the agent of the Gulf & Interstate road tendered to the agent of the other roads $2.50 per car, the sum usually charged for such service, when performed by the roads to which the tender was made; but the freights and the freight money were declined and the Gulf & Interstate Railroad was compelled to transfer the freight from the Gulf, Beaumont & Kansas City road to its own depot by wagons at much greater cost.    The Gulf & Interstate Railroad sued the Southern Pacific Railroad Company, the Texas & New Orleans Railroad Company, and the Sabine & East Texas Railroad Company for the penalty prescribed by the statute for refusing to receive freights from connecting railroads and for the damages sustained by it by such refusal; and, in a trial before a jury, recovered the sum of $19,247.50, which the Court of Civil Appeals reversed, and remanded the case for further trial.    The application for writ of error is based upon the allegation that the decision of the Court of Civil Appeals practically settles the case.

The correctness of the judgment of the Court of Civil Appeals de-

pends upon the proper construction of article 4535, Revised Statutes, which, so far as applicable to this case, reads as follows: "All railway companies doing business in this State shall be and they are hereby required to receive from all other railway companies with which they may connect * * * at any place within this State, or at any or all places where they may cross the line of any other railway doing business or operating a line of railway in this State, all freights and passengers coming to it from such connecting line and destined to points on its line, or to points beyond its line, or any other line of railway with which said line may connect or cross, and shall transport the same over its said line to destination, if on its line, or to the next connecting or cross line in the direction of destination, if beyond its line, without delay or discrimination in favor of or against the line from which such freight or passengers are received, and upon the same terms and conditions with those made by such line for like or similar service against any other railway in or out of this State with which it does business."

To bring this case within the terms of article 4535, the freight in question must have "come to" the defendant railroads from the Gulf, Beaumont & Kansas City Railroad, in transit, to a point upon the Texas & New Orleans Railroad or upon some other road connecting therewith, directly or indirectly. The words, *"coming to it,"* designate freight which has reached that line in the course of transportation, to be forwarded over the road of the receiving company. In this case, neither of the defendant railroads was in the line of transportation, as the freight was routed from Kirbyville to Galveston, and it was not destined to any point upon the Texas & New Orleans road, nor to a point on any railroad having connection with that road between the point where the freight was tendered and its final destination. The routing of the freight from Kirbyville to Galveston over the Gulf, Beaumont & Kansas City and the Gulf & Interstate railroads excluded the defendant railroads as parts of that line of transportation, causing a break in the connection at Beaumont which had to be bridged by some other means in order to continue the course pointed out by the routing of the freight.

The statute requires the railroad to which the freight "comes" to receive it and transport it over its line to the next connecting line in the direction of its destination. The Gulf & Interstate road connected with the Texas & New Orleans road at Beaumont and the latter could not have transported the freight over its line to the Gulf & Interstate as the next connecting line, because it did not connect with the Texas & New Orleans road in the direction of Galveston.

The proviso to article 4535 requires that the freight received "shall be shipped in the order in which it is received." The word "shipped" indicates carriage of the freight to or in the direction of its destination, and not the transfer from one road to another at the same station by a railroad which does not constitute a part of the route. The proviso contains this language: "The charges for the business required by this article to be interchanged shall be no greater pro rata per cent per mile

for freight and no greater rate per mile for passengers and baggage than is charged to any other line for transporting like freight and passengers and baggage." The business is *"interchanged"* and the charges must be a "pro rata per cent per mile;" that is, a part of the compensation for the through carriage. The transfer of freight from one railroad to another by a third road is not interchanging business, and a pro rata of the through rate could not be intended to apply to a carriage over switches and sidetracks, but aptly designates the compensation for services rendered in carrying the freight over a part of the route. The requirements of this article apply equally to passengers, and the compensation regulated by the mile, which is wholly inconsistent with the idea of a mere act of transfer from one line to another. In truth, there is nothing in the article to justify the conclusion that one railroad may be required to perform the work of switching and transferring freight between two other lines at a given point. If such were the case, every railroad company which is provided with yards and switches through which it connects with other roads for the purpose of receiving and discharging freights on its own line, could be required to carry on the business of a transfer company and assume the responsibilities of that business. If such had been the intention of the Legislature, it would have used some language to express it.

The scheme of our law is to give to the citizen full benefit of railroads as public highways; in furtherance of that purpose each railroad is required to receive from every other railroad connecting with it all freights destined to a point on or beyond its line, and a like duty is imposed upon every connecting line between the initial point and the place of delivery.

Neither article 4535 nor any law that we have been able to find imposes upon railroad companies the duty, or confers the power, to perform the service of transferring for other corporations freight, in the transportation of which it does not participate; and courts can not, by construction of the statute, add duties and responsibilities to those prescribed by law.

The Court of Civil Appeals did not err in reversing the judgment in this case, because the facts show conclusively that the plaintiff, the Gulf & Interstate Railroad Company, had no cause of action against the defendants. The writ of error being based upon the allegation that the decision of the Court of Civil Appeals practically settles the case, it becomes the duty of this court to enter final judgment against the plaintiff in error. It is therefore ordered by the court that the plaintiff in error, the Gulf & Interstate Railroad Company, take nothing by this suit and that the defendants in error go hence without day, discharged, and recover of the plaintiff in error all costs in this behalf expended in all of the courts.

*Affirmed and judgment rendered.*