## Texarkana & Ft. Smith Railway Company v. Rosebrook-Josey Grain Company.

### Decided October 30, November 26, 1908.

**1.—Carrier—Pleading.**

A suit against a carrier for negligent loss by fire of goods received for transportation may be in form of an action on contract or in tort. If the allegations are sufficient to support a recovery in the latter form the pleadings as to the terms of the contract are merely matters of inducement and a variance therefrom in the proof is not material.

**2.—Carrier—Switching Service—Loss by Fire.**

A railway company owning a spur track leading to the warehouse of a shipper, and undertaking, for a switching fee paid by the shipper or another carrier, to set thereon and haul out when loaded cars for shipment of freight over other lines of railway with which it connects at that place, is a common carrier with respect to such freight, and is liable, as other carriers, for the destruction by fire of freight delivered to it upon such spur, to be transferred to a connecting road for transportation over the latter's line.

**3.—Carrier—Delivery and Acceptance.**

A railway company set in upon its spur track by the warehouse of a shipper a car which was there loaded with freight for transportation over another line of road with which it connected in that city; being twice notified that the car was ready, it promised to move it to the proper connection; but before doing so and before the execution of a bill of lading, the car and contents were burned by a fire which destroyed the warehouse. Held that there was sufficient delivery and acceptance by it of the freight to attach to it the liability of a common carrier.

**4.—Bills of Exception—Statement of Facts.**

The right to preserve a bill of exceptions to evidence in the statement of facts was not dependent on the "Stenographer's Act," and hence not lost by its repeal.

**5.—Evidence—Books—Refreshing Memory.**

No error appeared in permitting a witness to use the entries in his ledger to refresh his memory as to the quantities and values of goods shipped, his other books having been destroyed by accidental fire.

Appeal from the County Court of Bowie County. Tried below before Hon. Sam. H. Smelser.

*Glass, Estes & King,* for appellant.—The plaintiffs are not entitled to recover upon the cause of action alleged, because of the variance between the pleading and the proof; and because the allegations are without evidence to sustain them. Middlebrook v. Zapp, 73 Texas, 31; Moore v. Kennedy, 81 Texas, 147; Western Union Tel. Co. v. Smith, 88 Texas, 9; Western Union Tel. Co. v. Byrd, 34 Texas Civ. App., 594; Maddox v. Summerlin, 92 Texas, 483.

Appellant is not liable herein, for the reason that it was merely engaged to switch or transfer the cars in question as stated in the foregoing proposition, and at the time of the destruction of said cars by fire it had done nothing more than to make the agreement to switch them and had not taken actual possession of them. Gulf & I. Ry. v. Texas & N. O. Ry. Co., 93 Texas, 482; Texas & P. Ry. Co. v. Scoggin, 40 Texas

Civ. App., 526; Kentucky & I. Bridge Co. v. L. & N. Ry. Co., 37 Fed., 567.

It was error to overrule the defendant's motion to strike out the plaintiff's testimony objected to. San Antonio & A. P. Ry. v. Turner, 42 Texas Civ. App., 532; Texas & P. Ry. v. Leggett, 86 S. W., 1066; Texas & P. Ry. v. Birdwell, 86 S. W., 1067.

*Todd & Hurley,* for appellee.—Only the substance of the issue need be proved. A variance is immaterial where no objection is made to the evidence, and the opposite party is not surprised or misled. McLellan v. Smith, 3 Texas, 211; Sublett v. Kerr, 12 Texas, 366; Hays v. Samuels, 55 Texas, 563; Smith v. Shim, 58 Texas, 3; Wiebusch v. Patterson, 64 Texas, 56; Gee v. Saunders, 66 Texas, 335; Brown v. Sullivan, 71 Texas, 476; First Natl. Bank v. Stephenson, 82 Texas, 436; St. Louis, A. & T. Ry. Co. v. Turner, 1 Texas Civ. App., 625; Kruger v. Klinger, 10 Texas Civ. App., 576; San Antonio Traction Co. v. Court, 31 Texas Civ. App., 146.

Appellant was a common carrier and liable as such without proof of negligence; though the undisputed evidence shows negligent delay in failing to remove the cars Saturday night or Sunday before the fire. Hutch., Car., secs. 4, 170, 171, 219; Chevallier v. Straham, 2 Texas, 116; Gulf, C. & S. F. Ry. Co. v. Trawick, 68 Texas, 316; Missouri Pac. Ry. Co. v. Haynes, 72 Texas, 180; St. Louis S. W. Ry. Co. v. Crawford, 35 S. W., 748; Fentiman v. Atchison, T. & S. F. Ry. Co., 44 Texas Civ. App., 455.

HODGES, ASSOCIATE JUSTICE.—The Rosebrook-Josey Grain Company, appellee herein, was a partnership firm doing business as grain and commission merchants in the city of Texarkana at the time of filing this suit. The Texarkana & Fort Smith Railway Company is a railway corporation operating a line of railroad into and through Texarkana, and also owns a number of switch-tracks which connect with the various other lines of railroad in said city; among those lines are the St. Louis Southwestern Railway Company and the St. Louis Southwestern Railway Company of Texas (commonly called the Cotton Belt), the Iron Mountain and the Kansas City Southern Railway. One of the switch-tracks belonging to the Texarkana & Fort Smith Railway Company runs along by the side of and in close proximity to the warehouse of the appellee, and is the only switch-track, apparently, which is so located. The evidence shows that it has been the custom adopted by the different railroads of Texarkana, together with the appellant and concurred in by the appellee, for the appellant to switch cars consigned to appellee, coming into the city of Texarkana over railroads which have no track connection with the appellee's warehouse, onto the Texarkana & Fort Smith switch-tracks in convenient proximity to the warehouse of the appellee, so that the same might be loaded and unloaded. A schedule of charges seems to have been adopted for that purpose. Where the freight going out is destined to some point beyond the limits of this State, the fee for switching is $2.00 per car; and where the car is destined to a point within this State, the fee is $1.50 per car. When the freight is destined to a competitive point it is paid by the railway

company over which it is routed; when to a non-competitive point, it is paid by the shipper. It appears from the evidence that when cars were loaded by the appellee and were ready for transportation, they notified the agents of the appellant, the Texarkana & Fort Smith Railway Company, of that fact, and the cars were switched by that company to the transfer-track of the railroad over which they might be routed; that no bill of lading was issued until the car had been inspected by the company which was to receive it; and that after such inspection the bill of lading was signed by the railway company over which the car was routed.

Some time prior to the 5th day of May, 1906, two cars loaded with goods consigned to the appellee were received by them at their warehouse on the switch-track of the Texarkana & Fort Smith Railway Company; one of them had come in over the Iron Mountain, and was switched by the Texarkana & Fort Smith Railway Company on its track adjacent to the appellee's warehouse; and the other had come in over the Kansas City Southern and the Texarkana & Fort Smith Railway Company, and was also carried to the same place. After these cars had been unloaded by the appellee they were again loaded with grain and other products for shipment to other points; one of them was destined to Pittsburg, Texas, and was to be routed over the St. Louis Southwestern Railway Company of Texas; the other was to go to Lumber, Arkansas, and was routed over the St. Louis Southwestern Railway Company. After the cars were loaded on Saturday evening, one of the agents of the appellant was notified of that fact. It had generally been the custom of the Texarkana & Fort Smith Railway Company when it received such switching orders, to move the cars some time during the night, so that the track might be clear and ready for use on the following day. This, however, was not done on that Saturday night; and on the following Sunday, some time about 2 p. m., another agent of the appellant was notified that the cars were ready and was requested to move them. He agreed to do so right away. The cars were not moved; and on Sunday night, about 10 o'clock, the warehouse of the appellee was destroyed by fire, together with the cars and the principal portion of their contents. To recover the value of the contents of those cars destroyed by that fire, this suit has been instituted.

After the conclusion of the evidence below, the court held that the only issue that should be submitted to the jury was the measure of damages, or the value of the property destroyed, all other issues having been withdrawn from the jury. A verdict was rendered assessing the value of the property destroyed at $650, and a judgment was accordingly entered by the court for that amount. From that judgment this appeal is prosecuted.

In the second amended original petition upon which the case was tried, the Kansas City Southern Railway Company and the Texarkana & Fort Smith Railway Company were sued jointly. Upon the trial of the case it appears that the plaintiff dismissed as to the Kansas City Southern and asked for judgment only against the Texarkana & Fort Smith Railway Company.

There are three grounds urged in the appellant's assignments of error, numbering from one to five, why this judgment should be re-

versed: 1st, It is insisted that there was a variance between the cause of action as pleaded and the facts as proven, and for that reason there was no basis for the judgment rendered by the court; 2d, that the appellant was not a common carrier, as shown by the evidence, and that the evidence tended to show that there was no actual delivery of the cars, but at most only a constructive delivery; and 3d, that the issues of whether or not the appellant was a common carrier, and as to there having been a complete delivery of the cars, should have been submitted to the jury.

Taking up these in the order in which they are named, it will be necessary to refer briefly to the allegations of the appellee's petition. After stating the location of the switch-tracks, the lines of railway and the custom which obtained in regard to switching and transporting freight from one road to the other, the averments are substantially as follows: That on the 5th day of May, 1906, the plaintiff delivered to the defendant at and upon the latter's switch-tracks adjacent to plaintiff's warehouse and place of business, for shipment over defendant's respective lines of road (naming them) the two cars of freight referred to; that said cars were accepted by the defendant, and the latter contracted and agreed with the plaintiff, for a valuable consideration, to wit, the regular freight rate, to transport and deliver each of said cars to its destination, naming the places to which each was destined as shown by the evidence. It was further alleged that after having so received said cars the defendant, regardless of its contract and duty, negligently delayed the transportation thereof, whereby both of said cars, after having been delivered to the defendant and while in its possession as a common carrier under its contract of shipment, were destroyed by fire.

It must be conceded that in this case there is a variance between some of the facts alleged in the appellee's petition and those proven on the trial. The testimony adduced was to the effect that the cars were delivered to the appellant company, not for shipment by it to their ultimate destination, but for the sole purpose of being switched onto the transfer-tracks of the two Cotton Belt companies. The consideration which the appellant was to receive for this service was no part of the regular freight rate to be paid for the transportation of the cars, but certain switching charges fixed at $1.50 and $2.00 per car. The objection urged by the appellant is not upon the ground that the variance operated to its surprise, or disadvantage, upon the trial, because the testimony seems to have been admitted without objection; but it is claimed now that there is no sufficient pleading, when applied to the evidence, to form the basis of the judgment rendered in this case.

Had this been a suit to recover damages for the breach of a contract for failing to transport the cars named to their respective points of destination, or had the exact consideration pleaded been a material fact in the case, it would have presented a different question. This, however, is an action, not for the breach of a contract growing out of a failure to deliver the goods, but for the recovery of a fixed sum for the loss of the goods by fire after they were delivered to and received by the carrier; and it is, therefore, wholly immaterial what the ultimate destination of the freight was, or what was the exact consideration to be paid for the services undertaken by the appellant. It is sufficient if it be alleged

and proven that the appellant was a common carrier, that for a valuable consideration it undertook to transport the cars of grain, and that they were delivered to and received by it for that purpose, and after such delivery, while in the hands of the appellant, were destroyed by fire. We think those facts are sufficiently alleged and proven to at least from the basis of judgment. Brown v. Sullivan, 71 Texas, 476; Hayes v. Samuels, 55 Texas, 563; 1 Greenleaf on Evidence, sec. 63.

The next question is, was the appellant a common carrier and was this fact shown by the evidence so strongly that the court could assume it as a matter of law? If such was the case, then there was no error in refusing to submit that issue to the jury. It was uncontradicted that the appellant was a railway company and was operating a line of railroad into and through Texarkana; that it also owned certain switch-tracks and spurs in that city, leading from different portions of the yards up to the warehouse of the appellee, and did own the tracks on which the cars were standing when destroyed; that the appellant was in the habit of switching cars to and from the transfer-tracks of other lines of railroad entering Texarkana, to the warehouses adjacent to its line of switch-tracks, and that it was accustomed to receiving cars upon those switch-tracks and carrying them out and delivering them upon the transfer-tracks of other railroad companies; that it had established by custom a stipulated fee for this service, which was to be paid by the shipper in some instances and by the receiving railroad company in others. The question, then, is, did this make the railroad company a common carrier when acting in this capacity? We think so. The common law definition of what constitutes a common carrier is too well known to be here repeated. Chevallier v. Straham, 2 Texas, 115; 1 Hutchinson on Car., secs. 47 and 48. Art. 10, sec. 2, of our Constitution provides that all railroads are public highways, and all railway companies are common carriers. It will not be denied that the Texarkana & Fort Smith Railway Company was, in a general sense, a common carrier; but the contention seems to be that in this particular line of business—that of switching cars over its switch-tracks to and from warehouses situated on its spurs and switches, to other points of the yards at Texarkana—it was not acting in the capacity of a common carrier, but merely as a private carrier. In support of this contention the appellant has cited the case of the Gulf & I. Ry. Co. v. Texas & N. O. Ry. Co., 93 Texas, 482, and also some other cases not necessary to mention.

In the case above mentioned the appellant company was doing a switching business at Beaumont. The T. & N. O. Railway Company sought to compel appellant in that case to receive from it and transport to other points in the yards at Beaumont certain cars of goods to be delivered to a connecting carrier and to be transported to other points. This service was refused by the T. & N. O. Railway Company; hence the suit. The question before the court in that case was, what constituted a connecting carrier within the meaning of the statute compelling one connecting carrier to receive and transport goods when tendered by another, and providing a penalty for refusing? The court held that the G. & I. Railway Company was not such a connecting carrier with the T. & N. O. in this shipment as to come within the meaning of the statute, and was not compelled to receive and switch

the goods to other points in the yards at Beaumont. The issue here involved was not there before the court.

We think the case of Missouri Pacific Ry. Co. v. The Wichita Wholesale Grocery Co., 40 Pac., 899, decided by the Supreme Court of Kansas, more nearly in point. The facts in this last-named case show that two carloads of sugar were transported over the Frisco Railroad to Wichita, Kansas, and consigned to a wholesale grocery company. The building occupied by the grocery company at Wichita fronted on Water Street and extended back to an alley. About two years prior to the loss of the sugar the Missouri Pacific Railway Company had built a spur running along this alley in the rear of the building occupied by the grocery company; this spur connected with the railroad track. Upon this spur track cars containing goods intended for the grocery company were placed when delivered at its building. There was also in the yards at Wichita a Y belonging to the Santa Fe Railway Company, upon which the Frisco usually placed cars intended to be switched to other parts of the yards and delivered at points off its track. The two cars whose destruction formed the subject-matter of this controversy were placed on the Y, and by the Missouri Pacific Railway Company switched over its track to the spur track in the rear of the grocery company's warehouse. For this service the Missouri Pacific was paid by the Frisco Railway Company $2.00 per car. After the cars had been placed upon the track adjacent to the building occupied as a warehouse by the grocery company, the warehouse itself burned, and the cars and their contents were destroyed under circumstances very similar to those attending this case. The question arose as to whether or not the Missouri Pacific Railway Company, in performing this switching service, was acting as a common carrier. The court, in delivering the opinion, referred to the fact that by the laws of the State of Kansas all railway corporations were made common carriers and were required to transport persons and property, as such, for all persons alike. Those provisions are almost identical with the constitutional and statutory provisions in this State. The court then proceeds to say: "The distance over which freight is hauled, whether in carload lots or in less quantities, whether in its own cars or those belonging to connecting carriers, can make no difference with the capacity in which the company acts. A railroad transporting a passenger or a carload of freight one mile, using a switch engine for motive power, is just as much a common carrier as if the distance were a thousand miles by regular freight or passenger train. The fact that compensation for this particular service was paid by the St. Louis & San Francisco Railway Company, while it might render that company also responsible, could not relieve the defendant company from its liability as a carrier. The defendant company was bound to receive and transport this merchandise as a common carrier, and there is nothing in the facts of the case showing that it did receive it in any other capacity."

It appears to us that the reasoning employed in the foregoing opinion is peculiarly applicable to the facts in this case and announces a correct proposition of law. If a railway company is *per se* a common carrier, we are unable to understand how it can disrobe itself of that

character when it undertakes for hire to transport freight any distance. This is the very service for which it was given the character of a common carrier, and it was intended by the law to make this peculiar characteristic follow it in all of its legitimate operations.

To the third question, was the evidence of a delivery and acceptance by the carrier in this instance so clearly established as to preclude the necessity of submitting the issue to the jury? we answer: If it be conceded that the appellant is a common carrier it must also be admitted that there was at least a constructive delivery of the two cars of freight. The railway company had begun and carried on a service of switching cars over its switch-tracks, to and from the transfer-tracks of other lines of railroad, to warehouses and places of business located along its switch-tracks in the yards at Texarkana, and had fixed a system of charges for its compensation. It had also adopted the custom of receiving cars, when loaded, on its switch-tracks, and undertaking to deliver them to the transfer-tracks at other points in the railway yards. The cars in question had been loaded and sealed; everything which the shipper could do had been completed, and the agent of the appellant had been notified of that fact and directed to move the cars out. He had been notified the second time, and had expressed his readiness to receive the cars in their then condition and had agreed to move them within a short time. The appellee had the right to rely upon these promises being carried into execution, and was not required to take any further steps towards having the cars moved. It may be regarded as a settled principle that when goods are deposited at a place where the railway company has fixed for receiving them, or where it has expressed a willingness to receive them, and the company is notified of that fact, the delivery is complete; and this is especially true if, after such deposit has been made and notification given, the company's agents assent and agree to receive the goods at the place of deposit, and thus relieve the shipper from the performance of any other service. Houston & T. C. Ry. v. Hodde, 42 Texas, 467; East Line & R. R. Ry. Co. v. Hall, 64 Texas, 615; Hutchison on Carr., secs. 119 and 120.

The sixth and last assignment of error complains of the action of the court in permitting the witness Josey, while testifying in behalf of the plaintiff, to refresh his memory from entries made in a ledger kept by the appellee, and to then testify as to the value of the property destroyed. The record contains no bill of exceptions reserved to the admission of this testimony, and for that reason this assignment can not be considered.

There being no error, the judgment is therefore affirmed.

### ON MOTION FOR REHEARING.

The ability and industry displayed by counsel for appellant in presenting their motion for a rehearing in this case, deserves more than a mere passing consideration. They renew with much earnestness their objection formerly presented, that there is a fatal variance between the allegations of the petition and the proof adduced upon which the judgment here must rest. They charge that the plaintiff's petition

showed upon its face an action based upon a contract for the carriage of goods, and not an action in tort to recover on a common law liability.

After a careful consideration of the argument presented, we feel constrained to adhere to our original conclusion upon this feature of the case. The principle of law underlying the appellant's contention is undoubtedly correct, but we do not think it is applicable to the pleadings and facts involved in this case. It is an old rule of practice which permits one who has sustained an injury by any wrongful act or omission in the transportation of freight, for which a common carrier may be held responsible, to seek compensation in an action in tort or to sue upon the contract of carriage. 3 Hutchison on Carriers, p. 1570. Formerly in those jurisdictions where the common law distinctions between forms of action were observed, if one elected to sue upon the contract he could not recover upon proof which would sustain only an action in tort. On the contrary, if he should elect to sue in tort his right of recovery would be restricted to proof of the facts alleged. 3 Hutchison on Carriers, sec. 1324 et seq. We do not think the same degree of strictness in the construction of pleadings should obtain in a jurisdiction like ours, where all technical forms of action are abolished and where each suit is a special action on the case, as will in those jurisdictions where the common law forms of pleading are still observed.

The case here presented is not one in which one contract is alleged and another proven; but the question is, are the averments of the pleadings such as to warrant the introduction of evidence to show the breach of a duty imposed by law? In other words, was the identity of the cause of action as stated so distinctively marked as to classify it as resting solely upon the contract of carriage, or was the language used such as to permit proof of facts showing a breach of a legal duty? It is true the petition alleges the making of the contract of carriage, but it does so in substantially the following language: That the plaintiff delivered the goods to the defendants upon their switch-track, for shipment over their lines; that the defendants received and accepted the cars so delivered, and contracted and agreed with plaintiff, for a valuable consideration, to wit, the regular rate of freight, to transport and deliver each of the cars to their destination. The destination of one of the cars is alleged to be at Pittsburg, Texas; the other at Lumber, Arkansas. It is further alleged that the defendants, regardless of their contract and in violation of their duty as common carriers, after having so received said cars wholly failed to transport the same and negligently delayed the transportation thereof, whereby both of said cars and their contents, after having been so delivered to the defendants and while in their possession as common carriers under said contract of shipment, were destroyed by fire. The facts proven show that this carrier was not to transport the freight to Pittsburg, Texas, and Lumber, Arkansas, but was to deliver the two cars upon the transfer-track in the railroad yards in the city of Texarkana, to be thereafter transported to their destination by other railway companies. The dereliction upon which the plaintiffs in the court below relied for a recovery of their damages was not the failure to perform the service of delivery at the points of destination, the contractual duty, but in negligently permitting the grain to be destroyed by fire while in their custody. In other words,

it alleged a bailment of the goods to the appellants, and a damage resulting from its legal liability as such bailee, but misstated the terms of contract of bailment. Where one has charge of the goods of another under a contract of bailment, and after obtaining such possession tortiously converts them to his own use, or negligently permits their destruction under such circumstances as would render him liable to the bailor for the value, if the suit for such value is brought specifically for the loss occasioned by the destruction or conversion, the details of the contract of bailment—the services which were to be performed thereunder—are immaterial, in an action for the value of the article, as affecting the right of recovery. Allegations regarding those details in such cases should be treated merely as matter of inducement; and in the introduction of testimony a strict adherence to details as pleaded should not be required. We think the pleadings in this case show that the basis of the suit was for the negligent loss of the grain, and not for the failure to transport to the points of destination. Hence, the allegations as to what those places of destination were, and as to the fact that the appellant was to transport to those points and not deliver to another for the purpose, we think, are wholly immaterial and not sufficient to affect either the introduction of testimony or the basis of the judgment. Cash v. Wabash Railroad Co., 81 Mo. App., 109; 2 Abbott's Trial Brief, sec. 128, and authorities there collated.

In the case above cited it appears that there was a written contract of shipment showing that the carrier undertook to transport the goods from Kansas City to St. Louis and there deliver to the connecting line, while the allegations of the petition averred that the carrier agreed to convey the shipment from Kansas City to Indianapolis. The court held that the variance was immaterial where it was sought only to hold the company liable for damages to the shipment while being carried from Kansas City to St. Louis.

In those cases where the plaintiff had the right to bring his action either upon contract or in tort, if the language of the petition is equivocal it will be construed as claiming damages in tort. Central Ry. Co. v. Chicago Portrait Co., 122 Ga., 11; 106 Am. St. Rep., 87; Whittenton Mfg. Co. v. Memphis & O. River Packet Co., 21 Fed., 896; New Orleans, etc., Ry. Co. v. Hurst, 36 Miss., 660, 74 Am. Dec., 786.

In the Whittenton case cited above the court used the following language: "Tort is the natural and habitual foundation of the action for the breach of the ordinary contract of carriage, and the declaration will be so construed unless the facts of the case clearly show that the plaintiff has elected to sue on contract." This language is quoted with approval in the Georgia case.

It is the general rule that all pleadings will be liberally construed for the purpose of sustaining the verdict. Murray v. Booker, 58 S. W., 788.

Under the present condition of the law governing the duties and liabilities of railway companies as common carriers, it is immaterial to the carrier whether the action to recover damages for the loss or injury to freight be upon contract or in tort, so that such allegations are used as show upon their face a cause of action.

What are termed contracts for the carriage of freight, usually evidenced by a bill of lading, stand in a class to themselves, and the bills

1908.] TEXARKANA & FT. S. RY. CO. v. GRAIN CO.

of lading are now practically no more than mere receipts for the goods. They are contracts only in name. When the freight is delivered to the carrier, either actually or constructively, with directions as to its destination, the carrier's liability at once arises and its duties are fixed by law and not by the terms of the contract. It may even exist in opposition to the very terms of the contract. The rate the carrier must charge is, or may be, fixed by law. It appears that about the only option the carrier can exercise in this State in intrastate shipments, is that of demanding or waiving the payment of the freight charges in advance. Why call a transaction a contract when either of the parties is deprived of the element of freedom so essential to entering into a binding agreement? If the liabilities of the carrier are fixed by law in all cases, then a failure to perform those duties is the breach of a legal duty and not of a contractual obligation. When the carrier accepted the goods of the appellee for shipment it then became responsible for any legal negligence which resulted to the same while in its care, regardless of the extent of the service it was to perform in the way of transportation or the amount of the consideration it should receive. When the goods were destroyed by fire while actually or constructively in its custody, the law presumed this to be the result of the carrier's negligence. Hall v. Nashville & C. Ry. Co., 13 Wall., 372, 20 L. Ed., 594.

In this case it was specifically alleged that the grain was destroyed by fire, due to the negligence of the carrier. While the general rule is that evidence not admissible under the pleadings will not be sufficient to support a verdict, yet the converse of that is equally true, that evidence which is admissible under the pleadings will support a verdict when the quantum of proof is not lacking. Under the facts here alleged it was admissible for the appellee to show that the appellant was a common carrier and that the goods were delivered to and accepted by appellant for transportation, and that while still in its custody the goods were destroyed by fire. This was sufficient to fix at least a prima facie liability, and was ample to support a judgment until overcome by evidence of some condition or situation which would relieve the carrier of the liability for loss of the goods by fire. All of this was shown upon the trial without objection; hence, we think there was sufficient proof to sustain the judgment. The objection here made is purely technical. Should the case be reversed and remanded, in another action sounding in tort, the liability of the appellant would be precisely the same; or should the allegations as to the details of the contract of bailment be amended so as to conform to the proof, it would not in the least affect the principle upon which the appellant's liability rests nor the measure of damages that might be recovered. It would seem to us to give undue importance to a bare legal technicality to sustain the objection urged by the appellant in this case.

It is also insisted that the court erred in the original opinion in refusing to consider the assignment of error wherein objection was made to the admissibility of the testimony of the witness Josey, who testified in behalf of the appellee upon the trial in the court below. We think we were in error in refusing to consider that assignment. We had overlooked the fact that the right to reserve an exception in a statement of facts was not predicated upon what is termed the "stenographer's Act,"

That right not being dependent upon that statute, its repeal would not affect the right to continue the former practice of embodying exceptions in the statement of facts, whether the statement was filed within term time or not. Under the authority of Stephens v. Herron, 99 Texas, 63, and Martin v. State, 47 Texas Crim. Rep., 174, we think parties excepting to the ruling of the court in permitting the introduction of testimony over objection may reserve their exceptions in the statement of facts as heretofore. However, we do not think that this will necessitate a reversal of the case.

The objection urged in the assignment of error is that the court allowed the witness Josey, in testifying in behalf of the plaintiff, to refresh his memory, or claim to refresh his memory, from entries made by plaintiff's bookkeeper in a ledger consisting of one of a series of books kept by them at the time the two cars were burned, and to testify as to the value of the contents of the two cars. The reason urged is that it was shown that the witness based his testimony upon those entries and that they were not such entries as he could legally refresh his memory from, and that the book was not such a document as he could legally use for that purpose. After the testimony had been admitted the appellant made a motion to strike it out, which was refused by the court; and this refusal is made the basis of the objection.

As against the objection urged, we think the court properly permitted the use of the ledger entries. It was shown that all of the other books of the firm in which any of those entries were made had been burned, and that the ledger contained the only written memoranda left. Miller v. Jannett, 63 Texas, 85; 1 Greenleaf on Evidence, sec. 439b.

The motion for rehearing is overruled.

*Affirmed.*