## THE MISSOURI PACIFIC RAILWAY COMPANY ET AL. V. ISAAC HEIDENHEIMER.

### No. 6932.

1. **Bill of Lading.**—A bill of lading is regarded as a quasi-negotiable instrument. It symbolizes the property which it describes. The assignment of it indorsed thereon accompanied by delivery of the instrument passes to the assignee title to the goods, so as to defeat the seller's right to "stoppage in transitu."

2. **Assignment of Bill of Lading as Pledge.**—The transfer of a bill of lading in way of pledge or as collateral security for a loan, if it does not absolutely defeat the right of "stoppage in transitu," the seller can not exert that right until he has discharged the debt secured by the transfer.

3. **Bill of Lading, Original and Duplicate.**—Upon shipment at St. Louis of a lot of merchandise bought one-half on credit by a firm at San Antonio, Texas, the railway company carrier executed two bills of lading, one marked *original*, the other marked *duplicate*. The former was retained by the vendor of the goods and the latter sent with bill of items to the purchasers. The balance of price was due in sixty days. The duplicate bill of lading was indorsed as collateral for a loan to Heidenheimer. Two days after the indorsement the consignees notified the St. Louis house that they were in financial trouble, whereupon it telegraphed for the stoppage and return of the goods. This was done. In suit by Heidenheimer against the railway company, *held*, that the bills of lading marked *original* and marked *duplicate* were of equal legal effect, and that the indorsement of the duplicate to a bona fide holder passed the title to the property, and destroyed the right of stoppage in transitu.

4. **Telephone, Conversations Through.** — Conversations through a telephone when pertinent are competent evidence. See example.

5. **Demand Before Suit for Conversion by Railway Company.** — In a suit against a railway company as carrier for nondelivery and conversion of goods a demand is not material, as it is the duty of the carrier to deliver the goods to the owner, and it is responsible for failure to so deliver them.

6. **Liability of Carrier.**—While the seller may exercise the right of stopping a shipment of goods while in the carrier's possession, and such stoppage would be a defense in favor of the railway company carrier against the demand of the consignee, still the right of stoppage in transitu must exist at time exercised. In this case the right had been destroyed by the indorsement of the bill of lading before the stoppage of the goods.

7. **Irrelevant Testimony.**—In defense it was alleged that Heidenheimer was a partner in the firm of Turnley Bros. & Co., the consignees from whom he was indorsee. In rebuttal the plaintiff was allowed over objection to read in evidence a petition in another suit, in which the firm of Turnley Bros. & Co. was alleged to be composed of the Turnleys. It was not offered to impeach any witness, and the objection was urged that it was irrelevant. *Held*, the admission was error, and it being probable that injury resulted it is ground for reversal.

APPEAL from Bexar. Tried below before Hon. G. H. NOONAN. The opinion states the case.

*Barnard & Green* and *McLeary & King*, for appellants.—1. The title to the car load of candles remained with the consignor so long as he held the original of the bill of lading or shipper's contract, and plaint-

iff as holder of the duplicate bill of lading acquired no title to them. Castanola v. Railway, 24 Fed. Rep., 267; Glynn Mills v. Dock Co., 5 Q. B. Div., 136; Dan. on Neg. Inst., 3 ed., sec. 1734; Maybee v. Tregent, 47 Mich., 495; The Idaho, 93 U. S., 575, 583; Covil v. Hill, 4 Denio (N. Y.), 323, 327; Jones on Pledges, secs. 230, 278, 279, and authorities cited.

2.   The petition of plaintiffs in case No. 2575, styled Turnley Bros. & Co. against A. B. Frank & Co., in an action for debt not in any way connected with the subject matter of this suit, and to which none of the parties to this suit were parties, could not be proper evidence in this suit for any purpose, and any statement in the original petition in that case that the firm of Turnley Bros. & Co. was composed of James B. and W. F. Turnley, was not material as evidence in the case on trial, and therefore the testimony was improperly admitted over the objection of defendant.   Duff v. Duff, 71 Cal., 513; Crump v. Gerock, 40 Miss., .765; 11 Whart. Law of Ev., 2 ed., sec. 1119.

3.   The Goodwin Manufacturing Company, holding the original bill of lading, had a right to order the defendant to stop the candles in transitu and return them to consignor, and defendant was bound to obey the order, notwithstanding the claim of plaintiff that he had loaned considerable money and taken a transfer of the duplicate bill of lading under the circumstances of this case, of which claim defendant had no notice.   Lickbarrow v. Mason, 1 Smith's Leading Cases, 1039; James v. Earl, 99 Am. Dec., 338; Arnold v. Delano, 50 Am. Dec., 754; Hays v. Manille, 14 Pa. St., 48; Hanse v. Judson, 29 Am. Dec., 377, and authorities cited in note; Benj. on Sales, secs. 862, 863; Jones on Pledges, secs. 278, 279.

C. *Upson*, for appellee.—1.   By the indorsement and delivery of the duplicate bill of lading the title to the carload of candles in question passed to appellee Heidenheimer, and entitled him to sue for and recover of appellants the value thereof with interest, for appellants' failure to deliver the same to him as the holder and assignee of said bill of lading.

2.   Where bills of lading are issued in sets of two or more, the property in the goods passes by the bill first indorsed to a bona fide indorsee thereof for value, the equities being equal.   Each bill of lading is a contract in itself as to the holder.   Jones on Pledges, sec. 278, p. 214; 2 Dan. Neg. Ins., 1 ed., sec. 1737, p. 628; 2 Am. and Eng. Encyc. of Law, p. 241.

3.   Where goods are consigned without reservation on the part of the consignor, the prima facie legal presumption is that the consignee is the owner.   And the consignee's title to the goods is complete if the bill of lading contains his name and is sent to him, subject only to the right of the consignor to stop the same in transitu for a breach of the

terms of sale, or by reason of the consignee's insolvency and the goods are unpaid for; provided the right of stoppage is exercised before a bona fide transfer for value of the bill of lading by the consignee to a third party. 2 Dan. Neg. Ins., 1 ed., sec. 1736, p. 628; 2 Am. and Eng. Encyc. of Law, p. 242, note 4; Id., p. 244; 2 Rorer on Rys., p. 1324, sec. 1; Id., p. 1345, sec. 7.

4. An assignment by indorsement of a bill of lading by the consignee to a bona fide third party, even while the goods are in transit, passes title thereto and defeats the right of the consignor to stop the goods in transitu. 2 Dan. Neg. Ins., 1 ed., secs. 1728, 1730, p. 624; Id., sec. 1748, p. 634; 23 Am. and Eng. Ry. Cases, 703, note "Stop. in trans.;" 2 Am. and Eng. Encyc. of Law, p. 244; Smith Mer. Law, 3 ed., secs. 377–379.

5. Where a bill of lading is transferred or delivered as collateral security the rights of the pledgee thereunder are the same as those of an actual purchaser of the goods for value, so far as the exercise of those rights is necessary to the holder's protection. One who makes a temporary advance to the vendee, taking the bill as his security, has the same rights as a buyer of the goods. 2 Am. and Eng. Encyc. of Law, pp. 243, 244, note 4; Conrad v. Ins. Co., 1 Pet., 386, 446; 1 Wait's Act. and Def., pp. 528, 529, sec. 11; Boone Law Mort., p. 450, sec. 317.

6. If the carrier delivers the goods to any other person than the indorsee and holder of the bill of lading, who is a bona fide purchaser or pledgee, he becomes liable to such indorsee and holder, and to the first bona fide indorsee and holder for value for a conversion of the goods. Where goods have been transferred from one carrier to another the last carrier is bound to deliver the goods to the holder of the bill of lading issued by the first carrier. Jones on Pledges, secs. 273, 274, pp. 210, 211; Id., sec. 276; 2 Rorer on Rys., p. 1274, sec. 15; Id., p. 1233.

TARLTON, JUDGE, *Section B.*—This suit was brought August 10, 1885, for nondelivery of 500 boxes of candles, by Isaac Heidenheimer, against the Missouri Pacific Railway Company and the International & Great Northern Railway Company, as connecting carriers with the St. Louis, Iron Mountain & Southern Railway Company. As an innocent holder for value of the bill of lading, plaintiff sued and recovered judgment. The following facts, most of which are contained in the court's conclusions and all of which are justified, we think, by the record, were developed on the trial:

On February 13, 1884, Turnley Bros. & Co., merchants residing at Galveston, Texas, bought from one George F. Tower, doing business as the Goodwin Manufacturing Company, of St. Louis, Missouri, 500 boxes of candles, of the value of $2634. By their direction the goods were

on said day consigned and shipped by the Goodwin Manufacturing Company to Turnley Bros. & Co., at San Antonio, Texas. The carrier issued and delivered to the Goodwin Manufacturing Company two documents, each purporting to be a bill of lading for the goods, signed by the carrier and consigned to Turnley Bros. & Co. at San Antonio, Texas; the one, however, stamped "original" and the other "duplicate." The consignor sent to Turnley Bros. & Co., at Galveston, the bill of lading stamped "duplicate," referring to it in the letter inclosing it as "bill of lading," and sending with it an invoice of the goods. The consignor retained the original, which never passed out of its hands until it was delivered to the carrier on the return of the goods, as hereinafter shown. The terms of the sale were part in cash and part by the note or acceptance of Turnley Bros. & Co., which cash and note were received by the Goodwin Manufacturing Company February 22, 1884. The goods were shipped over the St. Louis, Iron Mountain & Southern Railway via the International & Great Northern and the Missouri Pacific Railways as connecting lines, to San Antonio, where they arrived February 24 or 25, 1884.

On the evening of February 23, 1884, Turnley Bros. & Co. transferred, and, by their indorsement, assigned the duplicate bill of lading to Isaac Heidenheimer and delivered it to him. This transfer and assignment was in consideration of and as collateral security for a loan in cash of $3000 or $3500 at the time made by Isaac Heidenheimer to Turnley Bros. & Co. When this transfer was made Turnley Bros. & Co. were actually insolvent, but Heidenheimer did not know that fact, nor had he any reason to suspect it until after the loan and the transfer.

February 25, 1884, Turnley Bros. & Co., by telegram, informed the Goodwin Manufacturing Company that they were in trouble and directed it to stop the goods. In accordance with this notice, afterward confirmed by letter of the same date, the Goodwin Manufacturing Company on said day called on the Missouri Pacific Railway Company, notified it to stop the goods, and at the time delivered to it the bill of lading stamped "original," which was produced and read in evidence on the trial. The defendants returned the goods, in compliance with the consignor's order, about February 26, 1884.

We shall first consider appellants' second and fourth assignments of error, as in our opinion they present the pivotal questions in this case. In these assignments it is contended that the duplicate bill of lading sent by the Goodwin Manufacturing Company to Turnley Bros. & Co. did not carry with it the property described therein, and that as the original bill of lading was retained by the consignor for the purpose of holding the legal title to the goods until delivered, and as during transit the consignees became insolvent and one-half the price was unpaid, the right of "stoppage in transitu" was properly exercised; that

the transfer of the duplicate bill of lading in the manner and form stated could not operate to defeat such right.

A bill of lading is regarded as a quasi-negotiable instrument. It symbolizes the property which it describes. The assignment of a bill of lading, indorsed thereon, accompanied by delivery of the instrument, passes to the assignee title to the goods, though actually in transit, as complete as if they had passed through the buyer's hands and been delivered bodily to the assignee. When by such an assignment the consignee transfers it for value to a third party acquiring it in good faith, the right of "stoppage in transitu" is defeated. Dan. Neg. Inst., 3 ed., secs. 1727, 1728, 1730; 23 Am. and Eng. Ry. Cases, 703, note, "Stop. in trans.;" 2 Am. and Eng. Encyc. of Law, 242, 244. It is held also by some authorities that where a bill is so assigned as collateral security the rights of the pledgee thereunder are the same as those of an actual purchaser of the goods for value, so far as the exercise of those rights is necessary for the holder's protection; and that one who makes a temporary advance to the vendee, taking the bill as his security, has the same rights as the buyer of the goods. 2 Am. and Eng. Encyc. of Law, 243, 244, and note 4; 1 Wait's Act. and Def., pp. 528, 529, sec. 11; Campbell & Clough v. Alford, 57 Texas, 162; Adoue v. Seeligson, 54 Texas, 594.

In any event it must, we think, be conceded that if the transfer of a bill of lading by way of pledge or mortgage, or as collateral security for a loan, does not absolutely defeat the right of "stoppage in transitu," the seller can not exert that right until he has discharged the debt secured by the transfer, as his right is subject to that of the mortgagee or pledgee. Chandler v. Fulton, 10 Texas, 2; 1 Wait's Act. and Def., p. 529, sec. 13. Applying, then, the foregoing principles to the facts connected with the assignment by Turnley Bros. & Co. to Heidenheimer, it follows that the transfer defeated the consignor's right of "stoppage in transitu," provided that the duplicate bill of lading should under the circumstances of this case be regarded in the same light as the original. The question then arises, Does the instrument stamped "duplicate" possess the same validity as the one stamped "original"? Each was signed by the same carrier, deliverable to the same consignees, and expressed a receipt for the same goods.

In Daniel on Negotiable Instruments, third edition, section 1737, we find the following language: "Where there are several bills of lading, each is a contract in itself as to the holder, but there is one contract as to the masters and owners. Therefore, if the several numbers of the set of bills of lading be indorsed to different persons, and there be competition for the goods, the rule is that if the equities be equal the property passes by the bill first indorsed." "The usual course is to issue bills in triplicate originals, one to be retained by the carrier, one to be delivered to the shipper, and one to the consignee; and the person who

first gets óne of the three gets the property which it represents." 2 Rorer on Rys., p. 1317; Benj. on Sales, 2 ed., .684.

When the bill inclosed to Turnley Bros. was by them transferred to Heidenheimer it was not the less, in our opinion, to be regarded by him as an original because it was stamped "duplicate." It is to be presumed that he understood the word "duplicate" according to its legal signification, and he is to be considered as being affected with such notice, and no other, as the word so interpreted would give him. In law the word "duplicate" does not mean a mere copy. It differs from a copy in that a duplicate has all the validity of an original. Instruments are executed in duplicate that the parties may each retain an original. Black's Law Dic., word "Duplicate," p. 401; see also Burrill. And so Mr. Greenleaf, volume 1, section 558, lays it down that "if the instrument was executed in duplicate or triplicate, or more parts. the loss of all the parts must be proved to let in secondary evidence of its contents," thus indicating that all the parts are upon the same plane—each is to be regarded as an original.

Under the evidence in this case it can not be doubted that the con-signees had the legal title to the goods at the time of the assignment to appellee. They had complied with the terms of the purchase, having paid one-half the purchase money and executed their note or accept-ance, due in sixty days, for the remainder. They were in possession of the document, which, together with an invoice of the goods, had been inclosed to them as the bill of lading to which they were entitled. If at that time the goods had reached San Antonio, and the consignees or any assignee from them had presented the duplicate and demanded delivery of the carrier, could he have declined because they produced a bill of lading stamped "duplicate"? Could the carrier have exacted the production of the original on the ground that it had been retained by the consignor with a view to the exercise of its right of "stoppage in transitu," in the event of the insolvency, though unsuspected, of the consignees, or of their failure to pay the remainder of the purchase money, though not due within sixty days? We think not. We there-fore conclude that under the facts of this case the duplicate bill of lading in the hands of appellee possessed all the validity of the orig-inal; that it was as to appellee an original, not a copy; that the word "duplicate" stamped on the instrument should be held to indicate to the appellee no more than that the bill of lading had been executed in duplicate, and that by its transfer for value to appellee the Goodwin Manufacturing Company was precluded from exercising its right of "stoppage in transitu." We are aware that the opinion of Turner, J., 24 Federal Reporter, 268, conflicts with the view here expressed with reference to the effect of the word "duplicate," but the conclusion reached by us seems to be supported by the great weight of authority.

Our conclusion is of course expressed only with reference to the facts of this case.

After appellee had obtained the duplicate bill of lading, it appears that between the 25th and last of February, 1884, he telegraphed from Galveston to A. B. Frank & Co., of San Antonio, authorizing them for him to demand and receive the candles from the carrier. One W. H. Weiss, foreman of A. B. Frank & Co., was thereupon permitted by the court to testify, that "he made demand for the candles through the telephone; that he asked for the Missouri Pacific freight office, and presumed it was given him; that he asked if the candles in controversy were there, and told the person at the other end of the line that he had authority to receive them, and was answered by said person that the candles had been shipped back to St. Louis; that he did not remember who spoke to him through the telephone from the other end of the line, as so many changes had been made in that office, but he recognized the voice of the person answering at the time as one of the employes of the office with whom he had transacted business at that office; that he was accustomed to transact business with defendant's office by telephone." Objection was made to the admission of this evidence, because the witness could not state the name of the party who answered his message, nor that he was the agent of the defendant. The action of the court in overruling the objection is assigned as error. We think the objection, considered with reference to the reasons urged for the exclusion of the evidence, was properly overruled. The circumstances detailed by the witness indicated that the person with whom he was in communication was the agent of the defendant, the Missouri Pacific Railway Company. The inability of the witness to give the name of the person would bear rather upon the question of the weight than the admissibility of the evidence.

The court in its fourth conclusion of facts found that plaintiff between the 25th and 28th days of February, 1884, demanded delivery of the candles from defendants. This finding is assigned as error, as being unsupported by the evidence. We think the assignment well founded. The only evidence introduced with reference to a demand made of the defendants was that of the witness Weiss; and while this witness testified that he made a demand, his testimony wholly failed to show that he made the demand in the name of the plaintiff, or that he notified the defendants that he was representing the plaintiff. We further think, however, that this error is harmless. Such a demand was in our opinion immaterial. It is the duty of the carrier in discharge of his undertaking to deliver the goods to the consignee or his assigns. He must at his peril deliver the goods to the true owner. He must suffer the consequences of a mistake, however honestly made. If he deliver, however innocently, the property to the wrong person, such misdelivery becomes a conversion. 2 Am. and Eng. Encyc. of Law, p. 890; Price

v. Railway, 50 N. Y., 213.   He is excused, however, for nondelivery where the consignor exercises his right of "stoppage in transitu;" but it is evident that such right must exist in the consignor before it can be exercised by him.   It must be possessed by the consignor before it can be invoked by the carrier.   On February 25, 1884, when the Goodwin Manufacturing Company ordered the return of the goods, the right in it of "stoppage in transitu" was wholly wanting.   It had been, as shown by the authorities heretofore cited, defeated by the transfer on February 23, 1884, of the bill of lading by Turnley Bros. & Co. to appellee for value.   It had been as thoroughly defeated as if, without the carrier's knowledge, the indebtedness by Turnley Bros. & Co. to the consignor had been wholly paid, or as if they had in fact been solvent when the order for the return of the goods was made.   The defendants or their representative had issued the bill of lading, original and duplicate.   Inquiry prosecuted by them with the reasonable diligence of a prudent man would doubtless have resulted in ascertaining the facts of the transfer to Heidenheimer.   The misdelivery by defendants of the goods, by their return to the consignor, was therefore a conversion of the property.   A demand is unnecessary to justify a suit for conversion.

The preceding remarks have reference to the question raised by appellants' first, second, fourth, fifth, and eighth assignments of error. We have deemed it best to consider these assignments in their logical rather than their serial order.   We shall now consider the remaining assignments.

It was contended by appellants on the trial that the appellee Heiden- heimer was a member of the firm of Turnley Bros. & Co. at the time of the transfer relied upon by him.   In rebuttal of evidence introduced in support of this contention, appellee over objection of appellants used the record of a case filed March 8, 1886, in the District Court of Bexar County, wherein Turnley Bros. & Co. in their original petition stated that Turnley Bros. & Co. was a firm composed of James B. and William F. Turnley.   Appellants in their third assignment complain of the admission of this evidence as error.   It does not appear that the evidence was offered for the purpose of impeaching the statements of appellants' witnesses as to the existence of such a partnership.   No predicate had been laid for that purpose.   One of the grounds of objection by appellants was "that the defendants were not parties to said suit and were not affected or bound by the statements made therein." This objection should have been sustained.   The court erred in admitting the petition; and we are unable to say that the improper evidence did not influence the court in its conclusions.   We infer that it did in the absence of an intimation to the contrary.   If so, the judgment of the court was erroneously influenced on a material question; because, if appellee was a member of the firm of Turnley Bros. & Co., it is plain

that he could not occupy the attitude of an innocent holder for value of the bill of lading.

Appellants' sixth assignment of error indicates a misapprehension of the court's first conclusion of fact, to which it refers. The conclusion is not, as appellants contend, to the effect simply "that the candles were paid for by consignees when purchase was made," but "that said candles were paid for according to the terms of the sale, part in cash and part by the note or acceptance of said Turnley Bros. & Co., payable in sixty days," and received by the consignor February 22, 1884. This finding is supported by the evidence.

Appellants' seventh assignment charges error in the court in finding that the duplicate bill of lading was transferred as collateral security, whereas, as appellants here contend, the candles were sold to plaintiff, and not transferred as collateral security. We think that the evidence fully supports this finding of the court; but if the candles were really sold, instead of being transferred as security, this fact could not possibly benefit appellants or impair the condition of appellee. If appellee be entitled to protection as a bona fide mortgagee, he would certainly be protected as a bona fide purchaser.

In their ninth, tenth, and eleventh assignments, appellants complain that the court erred in the following conclusions of fact: ⊥. That plaintiff did not know or have reason to believe that Turnley Bros. & Co. were insolvent at the time that the duplicate bill of lading was indorsed to him. 2. That the firm of Turnley Bros. & Co. was composed solely of James B. Turnley and Wm. F. Turnley, and that plaintiff was not at that time a partner of said firm or connected with the business of said firm. 3. That upon the return of said candles to the Goodwin Manufacturing Company, said company was indebted to said Turnley Bros. & Co. in the sum of $1043.59.

The findings referred to were each of them we think supported by the evidence, except as to the issue of partnership, about which we express no opinion, as evidence thereon was, as already shown, erroneously admitted.

Appellants finally rely upon an additional or twelfth assignment of error, in which they charge that as to the Missouri Pacific Railway Company there was no evidence proving or tending to prove that said company ever had possession of the candles or any connection with their transit or return or "stoppage in transitu." The witness Tower stated that he gave the original bill of lading to the Missouri Pacific Railway Company, and supposed it was still in possession of the company; this company together with the International & Great Northern Railway Company produced the bill in evidence; it admits in its special answer that the bill was delivered to it and its codefendant; that the goods were transported by appellants to San Antonio, and were by

them, or the order of the consignor, returned to it.    We do not think this assignment well founded.

For the error pointed out, however, the judgment should be reversed and the cause remanded.

*Reversed and remanded.*