## AMERICAN RY. EXPRESS CO. v. SANTA ANNA GAS CO. (No. 6551.)

(Court of Civil Appeals of Texas. Austin. Feb. 28, 1923. On Motion for Rehearing April 4, 1923.)

**1. Carriers ☞158(3)—Liable for full value of goods converted.**

Where a carrier converted to its own use property shipped, it is liable for the full value of the property converted, notwithstanding limitation in contract of shipment.

**2. Carriers ☞147—Cannot limit liability by contract.**

Under Rev. St. 1911, art. 708, a carrier cannot limit its liability by contract.

**3. Carriers ☞91—Destruction of goods by fire, not conversion.**

Where the goods transported by a carrier are destroyed by fire, the carrier is not chargeable with conversion of them.

**4. Carriers ☞94(3)—Conversion by carrier presumed under evidence.**

In an action by a shipper for conversion of goods, where there is no evidence that carrier still holds the goods subject to delivery at some future time, it will be presumed that it has converted goods to its own use, because it is peculiarly within the knowledge of the carrier what became of the goods, and the burden is on it to show what disposition was made of them.

**5. Carriers ☞94(3)—Evidence sufficient to show shipment under written contract.**

In an action for carrier's conversion of goods shipped, evidence held sufficient to show that shipment was under written contract.

**6. Railroads ☞5½, New, vol. 6A Key-No. Series—Termination of federal control held immaterial in suit for conversion.**

Where a shipment of goods went forward under a bill of lading containing a limitation of liability, issued on February 28, 1920, it was immaterial, in determining the carrier's liability for conversion of the shipment, that federal control ceased on February 29, 1920, since the regulations previously established by Congress were continued by Act Cong. Feb. 28, 1920, c. 91, § 208, which section would be applicable if the suit was based on a contract instead of conversion.

On Motion for Rehearing.

**7. Carriers ☞150—Limitations of liability in shipping contract not applicable in case of conversion by carrier.**

Limitations of liability in a shipping contract have no application in case of conversion of goods by carrier.

**8. Carriers ☞94(2)—Allegations as to contract of shipment merely matter of inducement in action for conversion.**

Where the petition alleged a conversion by the carrier of goods shipped, allegations as to the contract of shipment were merely matters of inducement, showing how the goods came into the possession of the carrier.

**9. Pleading ☞12—In conversion against carrier, shipper need not show manner of conversion.**

A petition alleging that defendant carrier converted goods to its own use held sufficient; plaintiff not being required to allege the manner of conversion, since such information is within the knowledge of the carrier.

**10. Carriers ☞94(3)—Showing of failure to transport and deliver within reasonable time constitutes prima facie case of conversion.**

Showing of failure by carrier to transport and deliver goods within reasonable time constitutes prima facie case of conversion.

**11. Carriers ☞94(2)—Allegations of demand unnecessary in action for conversion.**

In an action against a carrier for conversion of goods shipped, an allegation that defendant failed and refused to transport and deliver the goods to consignee was sufficient, without alleging demand by consignee for delivery.

**12. Carriers ☞94(1)—In conversion against carrier burden is on carrier to show ability to deliver or account for disposition of goods.**

In order to maintain an action against a shipper for goods, a demand by the consignee is not necessary, since the burden is on the carrier to show that it was ready, willing, and able to make delivery, or to account for its inability to do so.

**13. Evidence ☞20(2)—Courts take judicial notice of fact express companies deliver shipment when consignee is known, and, if not, that notice is mailed of arrival of goods.**

Courts take judicial cognizance that it is customary for express companies to deliver the shipment when the consignee is known, and if not to mail him a notice of the arrival of the goods.

Appeal from District Court, Coleman County; J. O. Woodward, Judge.

Action by the Santa Anna Gas Company against the American Railway Express Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, and Snodgrass & Dibrell, of Coleman, for appellant.

Critz & Woodward, of Coleman, for appellee.

Finding of Facts.

JENKINS, J. On February 28, 1920, appellee delivered to appellant, at Santa Anna, Tex., one tent and one trip spear, to be shipped to Cisco, Tex. On the same day appellee took the trip spear from the possession of appellant, and used it for two or three days, when it returned the same, and the tent, together with the spear, were loaded in an express car, billed for Cisco. Neither of the articles was ever delivered, and there is nothing in the statement of facts to indicate what became of them. The trip spear was of the value of $630, and the tent of the

value of $35. Appellant, at the time these articles were first delivered to it, issued its receipt for the same, which contained, among other things, the following:

"In consideration of the rate charged for carrying said property, which is dependent upon the value thereof, and is based upon an agreed valuation of not exceeding $50 for any shipment of 100 pounds or less, and not exceeding 50 cents per pound, actual weight, for any shipment in excess of 100 pounds, unless a greater value is declared at the time of shipment, the shipper agrees that the company shall not be liable in any event for more than $50 for any shipment of 100 pounds or less, or for more than 50 cents per pound, actual weight, for any shipment weighing more than 100 pounds, unless a greater value is stated herein. Unless a greater value is declared and stated herein, the shipper agrees that the value of the shipment is as last above set out, and that the liability of the company shall in no event exceed such value."

This condition in the receipt was in accordance with the regulations adopted by the Interstate Commerce Commission. No weight and no value was declared at the time the goods were delivered to appellant, nor at any time. The weight of the trip spear was 500 pounds. Appellee brought this suit against appellant to recover the value of the trip spear and tent, $665, alleging that appellant had converted the same. Appellant pleaded its contract of shipment, claiming that it was liable only for 50 cents a pound on the 500 pounds, weight of the trip spear. Judgment was rendered on the verdict of the jury for $665.

### Opinion.

[1, 2] The determinative issue in this case is whether appellant is liable under its contract of shipment, or for conversion. If under the former, the judgment should have been for $250 for the trip spear and $35 for the tent. If under the latter, the correct judgment was rendered. If appellant converted the property to its own use, it cannot defend under its contract of shipment, and it is liable for the full value of the property converted. In this state a carrier cannot limit its liability by contract. Article 708, Revised Statutes; Railway Co. v. Crippen (Tex. Civ. App.) 147 S. W. 361; Railway Co. v. Greathouse, 82 Tex. 104, 17 S. W. 834.

[3] Appellant contends that the evidence in this case does not show a conversion, and cites in support of its contention Williamson v. Railway Co., 106 Tex. 294, 166 S. W. 692. In that case, the goods shipped by the railway company, for which suit was brought, were shown to have been destroyed by fire; such being the case, there was no conversion on the part of the carrier. Appellant also cites the case of Elder, Dempster & Co. v. Railway Co., 105 Tex. 628, 154 S. W. 975, in which the following language is used:

"Trespass does not arise 'from the mere omission to do a duty. * * * It must be an act committed, as contradistinguished from an act omitted. * * * A very long delay in the delivery of the cotton is shown, but no delay in delivering, *so long as the carrier safely keeps the property*, will amount to a conversion.'" (Italics ours.)

In that case it was shown that the cotton was still in the possession of the carrier.

The case of Elder, Dempster & Co. v. Railway Co., supra, adopted the views of this court in the case of Davies v. Railway Co., 62 Tex. Civ. App. 599, 133 S. W. 295, in which the following language is used:

"In order to constitute a trespass, there must be some act done and not the mere failure to perform an act which one in duty owes to another. Trespass does not arise 'from the mere omission to do a duty.' * * * Where, through the negligence of the employees of a railroad company, a mule was run over and killed, this was trespass; where, through such negligence, goods were left exposed to the weather and suffered damage, this was not trespass. In the one instance, through negligence, an act was committed; in the other instance, through negligence, an act was omitted which should have been performed."

[4] If appellee's ground of complaint was that the appellant failed to deliver the goods shipped within a reasonable time, this would not show a conversion, and the suit would be one upon contract for failure to deliver the goods within a reasonable time. But, as there is no evidence in this case that appellant still holds the goods subject to delivery at some future time, the presumption arises that it has converted the goods to its own use. Williamson v. Railway Co., supra. What became of the goods was a matter peculiarly within the knowledge of appellant, and the burden was upon it to show that they had been lost by theft, or destroyed by fire or flood, or in some other way, without the negligence of appellant, it has been deprived of the possession of the same. Failing to make such proof, the presumption is that it has converted the goods to its own use.

Appellant cites numerous authorities with reference to shipments under federal control, which would be applicable if it had not converted the goods to its own use, but are not applicable under such state of facts.

[5] Appellee contends that the goods were not shipped upon a written contract at all, but upon an oral contract, without any limitation, except the common-law liability to transport and deliver the goods within a reasonable time. This contention is based upon the fact that the receipt for the goods, issued by appellant on February 28th, was retained by appellee, and that when it returned the goods on March 3d they were shipped without any additional receipt being issued. This is true, but the testimony of

appellee's agent shows that the goods were shipped under the bill of lading previously issued. His testimony upon that subject is as follows:

"I went back to the agent at Santa Anna to get the spear. I did not turn the receipt which he had given me back to him. The agent of the American Railway Express Company at Santa Anna gave me a receipt when I turned the spear in for shipment on the 28th, and I filed it at the office. When I went back to re-ship the spear the second time, I went to the office and got the receipt, thinking that he would want to take up that receipt and rebill it. I had the first receipt in my pocket at that time. I then kept the receipt, as he told me to let it go forward under the original bill. I agreed to that, and let it go on then."

We think that this is sufficient to show that the goods were shipped under the written contract.

[6] We are of the opinion that the fact that federal control ceased on February 29, 1920, is immaterial, for the reason that, if the goods went forward under the receipt issued on February 28th, as we hold they did, the regulations theretofore established by Congress continued to be in effect. We quote from section 208 of the act of Congress upon this subject as follows:

"All rates, fares, and charges, and all classifications, regulations, and practices, in anywise changing, affecting, or determining, any part of the aggregate of rates, fares or charges, or the value of the service rendered, which on February 29, 1920, are in effect on the lines of carriers subject to the Interstate Commerce Act, shall continue in force and effect until thereafter changed by state or federal authority, respectively, or pursuant to authority of law; but prior to September 1, 1920, no such rate, fare, or charge shall be reduced, and no such classification, regulation, or practice shall be changed in such manner as to reduce any such rate, fare, or charge, unless such reduction or charge is approved by the Commission." 41 Stat. 464.

This would be applicable, if this was a suit upon the contract, instead of for conversion.

Finding no error of record, the judgment of the trial court is affirmed.

Affirmed.

### On Motion for Rehearing.

[7] The earnestness with which appellant's counsel argue in their motion for a rehearing that we have committed error in affirming the judgment of the trial court herein, induces us to add the following to our opinion in this cause: It is well settled that limitations in a shipping contract have no application in case of conversion. 10 C. J. 167, 168.

[8-10] Appellant contends that appellee's petition alleges a breach of contract of shipment, and not a conversion. The petition alleges that appellant converted the trip spear to its own use. But, says the appellant, this

is but a conclusion of the pleader; no facts are alleged to show a conversion, but the allegations do show a breach of the shipping contract. The allegations as to the contract are merely matters of inducement, which show how the trip spear came into the possession of appellant. Texarkana & Ft. S. Ry. Co. v. Grain Co., 52 Tex. Civ. App. 156, 114 S. W. 441; Elder, Dempster & Co. v. Railway Co., 105 Tex. 628, 640, 641, 650, 154 S. W. 975.

Failure to deliver necessarily shows a breach of the shipping contract, but the charge of conversion involves more. It is not required that the plaintiff in such case should allege the manner of the conversion. This ordinarily would be peculiarly within the knowledge of the carrier, and unknown to the shipper. All that he would ordinarily know would be that the goods were received by the carrier and never delivered to the consignee. Such failure to transport and deliver within a reasonable time would constitute a prima facie case of conversion. Railway Co. v. Heidenheimer, 82 Tex. 195–201, 17 S. W. 608, 27 Am. St. Rep. 861; Railway Co. v. Clemons, 19 Tex. Civ. App. 452, 47 S. W. 732; Williamson v. Railway Co. (Tex. Civ. App.) 138 S. W. 807–809. It is true that Williamson v. Railway Co., supra, was reversed by the Supreme Court (106 Tex. 294, 166 S. W. 693); but the reversal was on the issue of pleading, and did not affect the issue here under consideration.

[11, 12] It is contended by appellant that the allegations of the petition do not show a conversion, because it is not alleged that the consignee demanded the delivery of the goods. The petition alleges that appellant "failed and refused" to transport and deliver the trip spear to the consignee. A refusal implies a demand. But a demand was not necessary. It devolves upon the carrier to show that it was ready, willing, and able to make delivery, or to account for its inability to do so. In Railway v. Heidenheimer, 82 Tex. 201, 17 S. W. 610, 27 Am. St. Rep. 861, no demand was shown. The court said:

"Such a demand was in our opinion immaterial. It is the duty of the carrier in discharge of his undertaking to deliver the goods to the consignee or his assigns."

[13] We take judicial cognizance of the fact that it is customary for express companies to deliver the shipment when the consignee is known, and, if not, to mail him a notice of the arrival of the goods.

"The general rule is that the liability of an express company as a common carrier does not end until it has made or tendered a personal delivery of the goods to the consignee or owner, or to some person authorized by him to receive them." 10 C. J. 234.

The appellant, having failed to discharge its duty as a common carrier, cannot claim the benefit of its contract as such. In Ex-

press Co. v. Windham, 1 Tex. Civ. App. 267, 21 S. W. 402, cited by appellant, the plaintiff was denied a recovery on account of having failed to make demand for the shipment. That was not a suit for conversion, but for damage to fruit trees, by reason of failure to promptly deliver. The trees were shipped to the care of the railroad agent, and arrived on time. The consignee did not live at the point of destination. The express company published notices in a newspaper that the trees had been received. The owner saw these notices, but delayed in calling for or demanding the trees. It was held that he could not recover. In Railway Co. v. Tyler Coffin Co. (Tex. Civ. App.) 81 S. W. 826, the goods were tendered but were refused on account of alleged failure to arrive in time. Appellant also cites Express Co. v. Duncan (Tex. Civ. App.) 193 S. W. 412. The issue in that case was whether the express company's liability was that of a common carrier or a warehouseman. The goods were promptly carried to the point of destination, but the owner to whom they were shipped did not arrive until about a week later. They were destroyed by fire the next day after he had notice that the goods had arrived. In that case the court said:

"The obligation of the carrier includes the obligation of a safe delivery to the consignee, and its responsibility as a carrier continues until it has made actual delivery or done that which may be considered an equivalent to or the substitute for such delivery." 193 S. W. 412.

We have examined the cases from other states cited by appellant, and we do not regard them as sustaining appellant's contention.

The motion for rehearing is overruled. Overruled.