**ORMSBY et al. v. RATCLIFFE et al.**

No. 1251–5632.

Commission of Appeals of Texas, Section B.
April 1, 1931.

Burgess, Burgess, Chrestman & Brundidge and L. E. Elliott, all of Dallas, and Chas. L. Black, of Austin, for plaintiffs in error.

Davis & Hatchell and John Davis, all of Dallas, for defendants in error.

SHORT, P. J.

This case arose out of differences between the parties growing out of a contract executed December 31, 1919, which was terminated on December 31, 1920. It has reached the Supreme Court the second time, and in the meanwhile the record has become voluminous. The first opinion of the Court of Civil Appeals was reported in 298 S. W. 930. An opinion of the Supreme Court on one phase of the case is reported in 117 Tex. 242, 1 S.W.(2d) 1084. The second opinion of the Court of Civil Appeals, from which a writ of error has been successfully prosecuted, is reported in 22 S.W.(2d) 504. In the interest of brevity we ask that this opinion be read in the light of former opinions, and especially in the light of the facts found by the Court of Civil Appeals in its last opinion.

On December 31, 1919, the Republic Rubber Company of Texas, a domestic private corporation, was engaged in the distribution of automobile tires and accessories, on which date that corporation entered into a written contract with L. D. Ormsby and William P. Bell, who are the plaintiffs in error here, whereby the latter were given the right to handle, sell, and distribute this merchandise in certain specified territory, including the city of San Antonio. On December 31, 1920, when the written contract was terminated, the defendant in error, to whom had been assigned this cause of action by the corporation, claimed that the plaintiffs in error were due the corporation, and himself as assignee, the sum of $2,556.22, after allowing all legal offsets. Suit was instituted for this amount.

In addition to some special exceptions, the plaintiffs in error interposed a general denial, specially answered that the written contract was in fact a sales contract, and also alleged that the transaction in fact amounted to a violation of the anti-trust laws of the state. However, in the view we have taken of this case, it will not be necessary to discuss the question whether the transaction amounted to a violation of the anti-trust laws of the state.

There was a trial to a jury on special issues, which, with the answers thereto, are as follows:

"(1) From a preponderance of the evidence, what amount of money, if any, do you find and believe is due by the defendants to the plaintiffs herein; answer in dollars and cents." Answer: "$2,556.22."

"(2) Do you find from a preponderance of the evidence that the consideration for the account sued on wholly failed by reason of defective tires furnished by the Republic Rubber Company of Texas to the defendants?" Answer: "No."

"(3) Do you find from a preponderance of the evidence that the consideration for the account sued on has failed in part by reason of defective tires furnished by the Republic Rubber Company of Texas?" Answer: "No."

The court rendered a judgment on the verdict in favor of the defendants in error against the plaintiffs in error, jointly and severally, for the sum so found by the jury to be due, with legal interest thereon from January 1, 1922, and upon appeal to the Court of Civil Appeals at Waco the judgment of the trial court was affirmed. It is from this judgment that the writ of error has been prosecuted.

While there are nineteen assignments of error presented in the application, supported by numerous propositions, we do not think it necessary to discuss them in detail, since we have reached the conclusion that all of them should be overruled.

The Court of Civil Appeals correctly held that in determining whether the issues submitted, and whether the judgment rendered are supported by the pleadings, the trial court was authorized to supply omissions in the pleadings of one party by allegations in the pleadings of the other. The Court of Civil Appeals held that the pleadings of the defendants in error were sufficient, when aided by the pleadings of the plaintiffs in error, to authorize the submission of the issues, which were submitted, and to support the judgment rendered in the case, citing Ray v. Barrington (Tex. Civ. App.) 297 S. W. 781, and the authorities there cited.

After this instrument, dated December 31, 1919, had been executed, about October 22, 1920, the domestic corporation shipped to the plaintiffs in error a lot of tires and accessories marked N. F. C., meaning "not first class," apparently, but, in fact, the goods were first class, though they were represented to be otherwise, with the view of accelerating their purchase by consumers at reduced prices. The domestic corporation claimed that these N. F. C. tires and accessories were not delivered to the plaintiffs in error under the terms of the written contract, but that they were sold outright to them. The plaintiffs in error claimed that the goods which were delivered under the written contract, which guaranteed that the goods delivered should be free from substantial defects, were defective, and that, on account of alleged defects, the plaintiff in error had been damaged in an aggregate amount exceeding the debt claimed by the plaintiff in error. The testimony introduced by the plaintiffs in error, in support of their contention, was held by the Court of Civil Appeals to be too general to form a basis for a finding by a jury of any specific amount of damages suffered by the plaintiffs in error on this account. We have examined the statement of facts, and have reached the same conclusion which the Court of Civil Appeals did. The burden of proof rested upon the plaintiffs in error to establish the alleged fact they had suffered damages by reason of the failure of the corporation to comply with the contract, and the amount of such damages. In the absence of such testimony, they were not entitled to have this issue submitted to the jury.

The testimony is without any substantial conflict that the N. F. C. merchandise was not considered by either of the parties as being within the terms of the written contract, but that the merchandise was sold by the corporation and purchased by the plaintiffs in error. Speaking of the date of the termination of the written contract, Ormsby, one of the plaintiffs in error, testified: "I had no tires on hand there and kept no tires on hand there other than those I had bought outright on this N. F. C. deal." Again, this witness testified: "Up until the time they started this N. F. C. basis, I carried on my business as provided by the contract, whereby I reported the goods as I sold them. I then made trade acceptances on the first of the month previous. That arrangement was changed when they put on the N. F. C. basis or arrangement; thereby and thereafter I just took so many tires and they charged them to me and I held them in stock and sold them myself. * * * When I took and purchased this stuff I have been describing, I took it out of the stock which I had on consignment. * * * I took the stuff I bought on the N. F. C. basis out of the consigned stock; I also bought some I did not take out of consigned stock; they shipped me stuff from several other places; I bought on that basis; they shipped some from Dallas I bought on that basis, and I believe I got some from New Orleans that was bought on that basis. * * * We got some from other branches. These shipments I got from Dallas and other places were not shipped under consignment contract; I know they were not because they were bought outright." Since the N. F. C. goods were bought under an oral agreement made after the expiration of the written contract, they were not within the terms of the written contract, which provided that the corporation should reimburse the plaintiffs in error for any expense incurred in making adjustments by reason of defects in the goods claimed to have been consigned.

There was no issue requested to be submitted to the jury determining what part of the account sued on was for merchandise sold under the N. F. C. deal, and what part, if any, was due under the written contract of December 31, 1919. The testimony is amply sufficient to have justified the court in concluding that no part of the amount sued for arose from any transaction under the written agreement of December 31, 1919, and this question the court had the authority to determine in harmony with the other facts found by the jury and with the judgment rendered thereon, **in the**

absence of a request that the issue be submitted to the jury.

■ There is also testimony in the record tending to show that the amount claimed by the defendants in error is the amount upon which the corporation's agent, Ratcliffe, and the plaintiffs in error agreed as a final settlement of their affairs on December 31, 1920, including the goods delivered under the written contract and the goods delivered under the N. F. C. arrangement, and, if that testimony is true, then the judgment rendered could be upheld upon that theory, since no issue was requested with reference to this testimony. If the amount for which the judgment was rendered was due solely by reason of the N. F. C. deal, then the question whether the transaction evidenced by the contract of December 31, 1919, and the question whether the contract thus evidenced was in violation of the anti-trust laws, became immaterial. If there was another and different contract, outside of the contract, evidenced by the written instrument of December 31, 1919, which all of the parties agree was a sales contract, unhampered by any contention other than absolute delivery for a stated consideration, and an agreement to pay for the goods at certain prices, on certain dates, then there could be no violation of the anti-trust laws.

In view of the exhaustive opinion of Chief Justice Gallagher, which clearly disposes of all the questions presented by the application for the writ of error, we do not deem a further discussion of them to be necessary by us. The testimony which we have quoted in this opinion, given by Ormsby, one of the plaintiffs in error, which is not contradicted by any other testimony in the case, demonstrates, beyond cavil, that the amount for which judgment was rendered against the plaintiffs in error, in favor of the defendants in error, was for merchandise purchased outright by the plaintiffs in error from the defendant in error R. E. Ratcliffe, under and by virtue of the terms of an oral contract, as, for instance, in speaking of the termination of the written contract, this witness testified: "I had no tires on hand there and kept no tires on hand there other than those I had bought outright on this N. F. C. deal." Furthermore, the state of the record justified the trial judge in concluding there was a final settlement between the plaintiffs in error and R. E. Ratcliffe, the defendant in error, of all matters relating to the transactions had under the written contract, and that this sum, for which judgment was rendered, was the amount due by the plaintiffs in error, arising out of the transactions based on the oral contract, in connection with the agreed final settlement between the parties of all transactions had under the written contract.

We therefore recommend that the judgments of the Court of Civil Appeals and of the district court be affirmed.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both affirmed, as recommended by the Commission of Appeals.