**MIMS v. HEARON.**
No. 14479.

Court of Civil Appeals of Texas.
Dallas.
April 18, 1952.

Eades & Eades, Dallas, for appellant.

Wm. Andress, Jr., Dallas, for appellee.

YOUNG, Justice.

Mrs. R. A. Hearon originally instituted suit against United Van Lines, then by amendments adding Frank Mims and George T. Howard; alleging a contract of storage (personal property) with Van Lines in 1938 evidenced by non-negotiable warehouse receipt No. 12; that the warehouse and contents were transferred to the other named defendants (United Van Lines to Mims in 1940, who sold to Howard in

1944); and though demand was duly made, defendants had failed and refused to return the stored goods, to her damage, in sum of $2,500. Upon a jury trial and verdict, judgment was rendered against Mims in favor of Mrs. Hearon in sum of $1,880 from which this appeal has been perfected. Not excepted to was a "take nothing" judgment as against defendant Howard[1], and dismissal from suit of United Van Lines.

The property placed in storage by Mrs. Hearon consisted of items 1 through 16, household goods belonging to her, and items 17 through 34, electrical equipment belonging to her son R. J., all referred to hereinafter as Lot 12. It appears that the son sometime in 1941 had storage dealings in his own name with defendant, consisting of other electrical equipment designated generally as Lots 366 and 366A, portions of which were withdrawn by him, then returned to warehouse on several occasions over succeeding years; Hearon requesting a return of all property in 1946. There is no controversy here over the stored goods other than a claimed failure to deliver the items detailed in Lot 12, suit being filed in 1948 for the loss of such property and plaintiff by amended petition alleging that the household goods (items 1 through 16) had been found and returned in October 1950; the issue narrowing to a claim that items 17 through 34 had also been returned on the one hand, and for damages on account of their loss on the other.

These issues and the jury answers were in substance: (1) None of the four-power loud speakers were returned to plaintiff or R. J. Hearon or any of their agents or employees; (2) reasonable cash market value of said loud speakers in Dallas County at time of trial was $100 each; (3) items numbered 21, 22, 23, 24, 25, 26, and 27, as "cartons and contents" in warehouse receipt No. 12, each contained a 65 ft. microphone cable with line transformer, interconnecting cable and extra speaker extensions with terminals and fittings; (4) none of such cartons and contents were ever returned to plaintiff or R. J. Hearon; (5) reasonable cash market value of said cartons containing such 65 ft. microphone cable with line transformer, etc., at this time in Dallas County was $40 each; (6) items 28, 29, 30, and 31 described in the warehouse receipt as "box and contents," each contained a Western Electric microphone with special neck piece and. fittings; (7) none of said cartons and contents were ever returned to plaintiff or R. J. Hearon; (8) reasonable cash market value of each of said portable phonographs in Dallas County at this time was $400; (9) the merchandise described in Lot 12 was not transferred by defendant Mims to George T. Howard at time of transfer of the warehouse business from Mims to Howard.

██ The son, R. J. Hearon, knew at the time of original storage transaction that his electrical equipment had been delivered to the warehouseman along with household goods of his mother, receipt therefor issuing to her. The later dealings of Hearon as to storage of other equipment were in his own name, his supervision extending to all stored articles relative to their safekeeping, payment of charges, etc., over the next several years. Plaintiff, an elderly and infirm lady, had left all matters of business generally to the son who testified

1. This was pursuant to a stipulation had between Mims and Howard in connection with the latter's cross-action against appellant, viz.: "That at the time said defendant Mims turned over certain lots of furniture he had in storage to the defendant Howard, that said parties made an agreement and said defendant Mims agreed to save and hold harmless the defendant Howard from any and all claims, damages, loss, or liability arising in favor of any holder or holders of the said Mims' warehouse receipts or any merchandise under which the said Mims did not turn over the records to the defendant Howard. It is further agreed and stipulated by and between said defendants, that defendant Mims did not turn over to defendant Howard any of the records related to Lot No. 12 owned by Mrs. R. A. Hearon. And that in the event said Mrs. R. A. Hearon, plaintiff in this case, recovers any damages against said Howard, that such damages would be covered by and included in the aforesaid indemnitory agreement, and therefore said Howard would be entitled to judgment over and against the defendant Mims in accordance with the terms of said agreement."

and actively participated in the trial. The judgment rendered was in favor of "Mrs. R. A. Hearon for the use and benefit of R. J. Hearon"; in which respect appellant complains of error through several points. R. J. Hearon, owner of the goods in suit, was not included as a party plaintiff, for which reason appellant asserts a lack of necessary and indispensable parties; in particular that appellee sustained no such legal relationship to owner of this electrical equipment as would entitle her to sue for its loss. The objection was first made in defendant's motion for peremptory instruction; and though plaintiff's counsel could properly have met the situation by trial amendment, the failure to include R. J. Hearon as party is deemed of little consequence. By Hearon's voluntary placement of his electrical equipment under non-negotiable warehouse receipt issued to his mother, it came constructively into her possession with resulting relationship between them in nature of a bailment. It is well settled in this State that a bailee has a right of action with respect to the bailed property. 5 Tex.Jur. 1032, 1033; 6 Am. Jur., p. 445; 56 Am.Jur., p. 431; Perkins v. Terrell, Tex.Civ.App., 214 S.W. 551 (writ ref.), syl. 5: "If a necessary party, for whose use and benefit plaintiff assumed to sue, were personally present at trial of the suit, directing the suit as far as it affected his interests, judgment therein would bind him, and there would be no reversible error in refusing to make him an actual party of record." See also Masterson v. International & G. N. Ry. Co., Tex.Civ. App., 55 S.W. 577; Ormsby v. Ratcliff, Tex.Civ.App., 22 S.W.2d 504, affirmed, Tex.Com.App., 36 S.W.2d 1005; Pelton v. Trico Oil Co., Tex.Civ.App., 167 S.W.2d 625. Appellant is amply protected against further claim on part of R. J. Hearon, he being finally bound by a judgment prosecuted for his use and benefit.

Appellant next assigns error in rendition of judgment upon a contract allegedly made between appellee and United Van Lines, assumed by Mims, whereas recovery was allowed upon an entirely different contract between the son, R. J., and Frank Mims. The point is overruled, appellant obviously confusing the individual dealings of R. J. Hearon in later storage transactions involving equipment brown in color; the instant suit being based upon similar property gray in color, the contents in part of Lot 12, deposited as already shown in December 1938.

Point 5 urging the two-year statute of limitations, Vernon's Ann.Civ.St. art. 5526, in bar of all claims is similarly without merit. Plaintiff's suit was for failure to deliver goods under a warehouse deposit contract in writing between Mrs. Hearon and United Van Lines, admittedly assumed by defendant Mims together with statutory obligations; Art. 5612 et seq. Vernon's Ann.Sts.; McGhee v. Roberson, Tex.Civ. App., 233 S.W.2d 344; and manifestly governed by the four-year statute of limitations, Art. 5527, V.A.S.; Missouri, K. & T. Ry. Co. v. Hunter, Tex.Civ.App., 216 S.W. 1107; it appearing without question that the earliest demand for return of all merchandise was in April 1946, followed by joinder of appellant as party-defendant in February 1949. In the same connection there was no error in the court's refusal of defendant's requested issues, (1) whether Mrs. Hearon had failed to pay storage on the property listed in Lot 12 since 1941; and (2) whether aforesaid property had been abandoned in view of the undisputed record of payments relative to storage of all merchandise. Numerous exhibits offered by both plaintiff and defendant show no allocation of payments to the original Lot 12. R. J. Hearon's check of September 22, 1943 was a payment on account, answered by statement of Mims of date December 2, 1943 claiming balance due of $83.80 on a storage bill of $153.40 inclusive of "6/28/41 to 12/28/43." After such interchange of letters, Hearon mailed check for the latter amount on June 24, 1944, and in further communication with Howard of date December 22, 1945, enclosed $25.00 "to cover bill submitted for equipment storage through December 28, 1945"; referring therein to "the old furniture lot held jointly with my mother, Mrs. R. A. Hearon"; and expressing hope that all storage matters could be straightened out. Upon request by Hearon in April

1946 for return of all storage, the property (except Lot 12) was delivered by Howard Van Lines upon payment of $227.87 charges; and while all transactions subsequent to March 1944 (date of transfer from Mims to Howard) were made with the latter, appellant was equally bound thereby. No issue of laches or abandonment was raised on behalf of defendant, notwithstanding his testimony that nothing had been paid on the storage designated as Lot 12 since 1941, and that before turning the warehouse business over to Howard he had put Lot 12 "in the dead file." It occurs to us that over the whole period, Lot 12 merely became an inactive account; Hearon testifying to payment of all bills as received, and inspecting the property in presence of Mims as late as the fall of 1943. No testimony was offered of any intention on part of Mrs. Hearon to abandon the particular goods.

█ . Point 9 complaining of want of statutory demand, and 10 that appellee at best is entitled to no more than nominal damages, may be overruled without comment. The record reflects sufficient compliance with Art. 5619, V.A.S., requiring demand for the stored goods to be accompanied by an offer to satisfy the warehouseman's lien; appellee's right to sue for the value of all property covered by the receipt having been heretofore demonstrated.

█ It is contended that the form of issues 3, 7, 11 and 14, requiring the jury to fix a market value of the property in question "at this time" (meaning date of trial), called for an improper measure of damages. While ordinarily in conversion cases such as this, the damages are measured by value of the property at time and place of conversion, together with legal interest on that value, 42 Tex.Jur., p. 572, the rule may be adjusted to varying facts and circumstances. Here the plaintiff, while pleading a demand, fixed no time of defendant's failure and refusal to deliver. A recovery of the property rather than its value was consistently sought by R. J. Hearon acting for his mother; items 1 to 16 (furniture) having been located and

accepted by the owner long after institution of suit. Testimony on market values was from this witness (Hearon); he stating that values as of April 1946 were substantially higher than on date of trial, owing to lack of civilian production. By form of the issue, appellee has also waived the right to interest on any recovery except from date of trial; and the result being altogether favorable to appellant, he is in no position to complain of an otherwise improper submission.

█ Issues 1, 5, 9, and 12 in sum inquire as to whether "from a preponderance of the evidence" any of the items of property (17 to 34 inclusive) had been returned to Mrs. R. A. Hearon, R. J. Hearon, or any of their agents or employees—unquestionably placing the affirmative of these issues on the defendant—, and in point 12 he asserts that the burden is thereby misplaced; in short, that it was plaintiff's burden to establish a failure to return the property. While plaintiff pled and testified to a failure and refusal to deliver the particular storage, the same was denied by defendant, he insisting that all property had been returned. A controverted issue thereby arising, the burden on the whole case remained on the plaintiff as depositor to establish her loss; in which connection, defendant's allegations to effect that the merchandise had been returned in no sense constitutes a purely defensive issue. The question of redelivery, or not, remained a matter of dispute, as already stated, and an essential element of her cause of action. The point is sustained. 5 Tex.Jur., p. 1039; 6 Am.Jur., p. 458. See also 13 A.L.R.2d, Annotations, pp. 687, 688.

█ Issue 4, inquiring if items 21 through 27 contained "a 65 ft. microphone cable," etc., and issue 8, if items 28 through 31 contained a "Western Electric microphone," etc., are likewise without support in the evidence; Hearon testifying in connection with issue 4, "I do not know what was contained in those cartons because there is no evidence here of contents. I only know what was in the total lot." He stated merely that there was a large number of those cables "in those boxes,

or in some of the other unidentified boxes"; and was equally general concerning the contents of items 28 through 31. Notwithstanding this, the jury found that each of the cartons mentioned in the respective issues contained the described articles, with judgment rendered in amount of their aggregate value. Obviously, under above state of the evidence, whether each of the mentioned cartons included a "65 ft. microphone 'cable," etc., or a "Western Electric microphone," etc., was purely a matter of surmise and conjecture. In the same connection, appellant contends that these issues (4 and 8) are multifarious in that the question of contents of each item should have been submitted separately; which point is overruled. The seven cartons of issue 4 and four boxes of issue 8, were treated in pleadings and throughout the trial as having identical contents, or as alike as "peas in a pod." "The grouping, vel non, of items constituting a single ultimate fact issue goes to the manner and form of submitting the special issues, and falls within the discretionary duties of the trial judge." Luling Oil & Gas Co. v. Edwards, Tex. Civ.App., 32 S.W.2d 921, 924. Nor can appellant be harmed when it is seen that such condensing of issues has placed upon appellee more onerous a burden than necessary to be borne.

The errors assigned in other points may not recur on another trial. The form of various issues, assuming a market value for the equipment, was not thereby a comment on the weight of the evidence in view of the testimony of R. J. Hearon, an acknowledged expert on electronic equipment. His statements relative to market value thereof were direct, positive, and uncontradicted, with no circumstances outstanding to cast suspicion on them. Cochran v. Wool Growers Central 'Storage Co., 140 Tex. 184, 166 S.W.2d 904; Continental National Bank of Fort Worth v. Conner, 147 Tex. 218, 214 S.W.2d 928. And appellant's claim that liability at most was only $25 per item under express stipulation of the warehouse receipt is in conflict with Art. 5575, V.A.S., prohibiting such limitation of liability as construed by Longwell

Transfer v. Elliott, Tex.Civ.App., 267 S.W. 346, writ refused. See also American Ry. Express Co. v. Santa Anna Gas Co., Tex. Civ.App., 250 S.W. 271. However, for the errors hereinabove pointed out, the judgment under review is reversed and cause remanded for another trial.