CITIZENS CO-OP GIN et al., Plaintiffs-
Appellees,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 28136.

United States Court of Appeals,
Fifth Circuit.

June 16, 1970.

Johnnie M. Walters, Asst. Atty. Gen.,
Tax Div., Lee A. Jackson, Stephen H.

Hutzelman, Crombie D. Garrett, Attys., Dept. of Justice, Washington, D. C., Earl R. Allison, Levelland, Tex., Edward W. Napier, Lubbock, Tex., Eldon B. Mahon, U. S. Atty., Fort Worth, Tex., for defendant-appellant.

J. R. Blumrosen, Thomas J. Griffith, Lubbock, Tex., for plaintiffs-appellees.

Before WISDOM, GOLDBERG and INGRAHAM, Circuit Judges.

GOLDBERG, Circuit Judge:

■ The Commissioner of Internal Revenue contests an adverse judgment of the court below regarding the relative priority of a federal tax lien. The Commissioner asks us to narrowly construe the Federal Tax Lien Act, ignoring the fact that its very genesis was in generosity. Looking to the Congressional intent underlying the statute, we refuse to subvert its tolerant purpose in such a fashion.

The taxpayers, J. B. and Leola Marion, were indebted to the United States for $37,261.51 in income taxes as a result of a Tax Court judgment entered on March 11, 1968. The United States filed notice of the federal tax lien against the Marions' property on July 16, 1968, in Lubbock County, Texas and Hockley County, Texas. The Commissioner, however, apparently made no attempt to foreclose its lien against the taxpayers' property in these counties, and the Marions continued to operate, among other things, a cotton farm in Hockley County.

In the spring of 1968 the Marions purchased cotton seed from the Citizens Co-op Gin and thereafter planted this seed on the Hockley County farm. When this crop matured about the middle of October, 1968, the taxpayers obtained the services of J. D. Rackler to harvest the cotton and deliver it to a gin. Rackler and his one employee harvested and stripped the cotton and delivered it to the Citizens Co-op Gin. Upon delivery the gin marked the cotton with Rackler's name and issued Rackler a "gin ticket" showing his delivery of that cotton. The gin then cleaned the cotton, separated the seed and lint, and pressed, bagged, and banded the lint. Having completed all necessary services, the gin then delivered the bagged cotton to a warehouse for storage and received negotiable warehouse receipts in return.

The customary procedure at this point was for the gin to hold the warehouse receipts until the cotton was sold or placed in government loan. In either case the gin would exchange the warehouse receipts for the proceeds, deduct the ginning fees, pay the storage and the farm labor fees, and then remit the net proceeds to the owner. In the present case, however, the normal procedure was interrupted on November 7, 1968, when the Commissioner served the gin with a notice of levy on the Marions' property and demanded the warehouse receipts which were in the possession of the gin.

The gin responded by filing an interpleader action in which it asserted that it faced conflicting demands for the cotton harvested from the Marions' farm. The gin was claiming $120.52 for its own services, Rackler was claiming $1,178.60 for his harvesting services, and the government was claiming it all.

At trial the district court found that both Rackler and the gin had valid liens against the cotton which were superior under 26 U.S.C.A. § 6323 to the government's tax lien. The government appeals, claiming that the trial court erred in its determination that the government's lien was inferior to the claims of Rackler and the gin. Agreeing with the judgment of the trial court, we affirm.

I.

In prior years the government clearly would have had a claim against the cotton superior to the claims of Rackler and the gin since the notice of the tax lien was filed before either competing claim became choate. See, e. g., United States v. White Bear Brewing Co., 1956, 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871, rev'g 7 Cir. 1955, 227 F.2d 359; United States v. Liverpool & London &

Globe Ins. Co., 1955, 348 U.S. 215, 75 S. Ct. 247, 99 L.Ed. 268; United States v. Acri, 1955, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264. However, Congress changed the well established priority rules when it passed the Federal Tax Lien Act of 1966, 26 U.S.C.A. § 6323 et seq. In that Act Congress expanded the preferred class of claims, known as "superpriorities," which are valid against a federal tax lien even though notice of the tax lien has been filed before the claim arises. Rackler and the gin both assert that their claims are protected from the federal tax lien under this section.

The particular superpriority involved is found in 26 U.S.C.A. § 6323(b) (5), which provides:

"(b) *Protection for certain interests even though notice filed.* Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid—

\* \* \* \* \* \*

(5) *Personal property subject to possessory lien.* With respect to tangible personal property subject to a lien under local law securing the reasonable price of the repair or improvement of such property, as against a holder of such a lien, if such holder is, and has been, continuously in possession of such property from the time such lien arose."

The question before us is whether the interests claimed by Rackler and the gin in the cotton harvested from the Marions' farm are indeed protected from the tax lien by § 6323(b) (5). We think they are.

■ In construing § 6323(b) (5) we write on a clean slate, since no other court has heretofore been called upon to interpret this statute. The remedial purpose of the legislation, however, is quite clear. The statute was designed to protect those who add value to the government's tax lien by repairing or improving the property at their own expense in money or labor and who could not be expected to search the tax lien records. S.Rep. No. 1708, 89th Cong.,

2d Sess., 3 U.S.Code Cong. and Adm. News, 3722 (1966). With this salutary purpose in mind we begin our investigation of the effect of § 6323(b) (5) on the relative priorities among the claimants in this case.

■ Congress limited the superpriority protection of § 6323(b) (5) to claims against personal property by those who have a lien under local law securing the reasonable price of the repair or improvement of that property and who have been in continuous possession of the property from the time the lien arose. We have no difficulty in finding that both Rackler and the gin had the required liens against the cotton under local law. Texas, following the general rule, recognizes an equitable lien in favor of a party when the surrounding circumstances indicate that the parties to a transaction intended that certain property would secure the payment of a debt. The Texas rule was stated in Williams v. Greer, Tex.Civ.App.1938, 122 S.W.2d 247, 248:

"After a transaction resolves itself into a security, whatever may be its form, and whatever name the parties may choose to give it, is in equity a lien. \* \* \* It is not necessary that a lien is created by express contract or by operation of the statute; courts of equity will apply the relations of the parties and the circumstances of their dealings in establishing a lien based on right and justice."

*Accord,* Bradley v. Straus-Frank Co., Tex.Civ.App.1967, 414 S.W.2d 504; Edinburg Theatres, Inc. v. Richter, Tex. Civ.App.1963, 367 S.W.2d 354; First Nat'l Bank in Big Spring v. Conner, Tex.Civ.App.1959, 320 S.W.2d 391, writ ref'd n. r. e.; Rountree Motor Co. v. Smith Motor Co., Tex.Civ.App.1937, 109 S.W.2d 296, writ dism'd.

■ In the instant case the testimony was uncontradicted that the usual custom in the Hockley County area was for the gin to hold the warehouse receipts until the cotton was sold, to pay off all charges against the cotton with the pro-

ceeds of sale, and then to remit only the net amount remaining to the landowner. The testimony indicates and the trial court found that the warehouse receipts would not have been given to Marion until the charges against the cotton were paid. Under such circumstances, we think it clear that all parties intended that the cotton would secure the debts owed for the harvesting and ginning of the cotton. Under Texas law, therefore, both Rackler and the gin have equitable liens against the cotton for the amount of their charges.[1]

So clear in fact is the Texas law on this point that the government virtually concedes that both Rackler and the gin had valid equitable liens on the cotton harvested from the Marions' farm. The government does argue, however, that such an equitable lien is insufficient to entitle the lienholder to a superpriority under § 6323(b) (5). The government's argument in this respect is predicated upon its contention that the lien must be possessory in the sense that the state law creating the lien must give the claimants the legal right to withhold delivery of the property to the owner until payment is made. An equitable lien, the government asserts, confers no such right on the creditor. We do not agree.

■■ It is true, as the government argues, that an equitable lien does not depend upon possession for its validity. It does not follow, however, that in all cases an equitable lien gives the lienholder no right to possession. In the instant case the equitable lien arose because of the implied agreement among the parties that Rackler and the gin would in fact maintain possession of the cotton until the charges for harvesting and ginning were paid. Their continued possession of the cotton was therefore legal. We think this is sufficient under § 6323(b) (5). To hold otherwise would require us to infer an intent on the part of Congress to protect only those lien-holders who happened to live in a state which had explicitly pronounced a right of possession in the lienholder. We find nothing in the Act which indicates that Congress intended for the superpriority to depend on the vagaries of this aspect of the various state laws. The precise wording of § 6323(b) (5) requires only that the property be subject to "a lien under local law"; it does not specify that the lien must be one depending upon or authorizing possession. Since this is clearly remedial legislation, we see no need to read such a restriction into the statutory scheme. Indeed, since Congress did specify continuous possession of the property as a prerequisite to superpriority protection, we think it was the maintenance of possession with which Congress was concerned, not the particular wording of the state lien laws. We conclude, therefore, that the equitable lien was sufficient under § 6323(b) (5) to entitle both Rackler and the gin to priority over the federal tax lien.

■ The government contends, however, that even if the lien held by Rackler and the gin was sufficient to qualify for superpriority protection, they waived their protection because neither remained in continuous possession of the cotton as required by § 6323(b) (5). The government's position stems from the fact that Rackler delivered the cotton to the gin and the gin later delivered the bagged cotton lint to a warehouse. Thus the government claims that neither had continuous possession of the property. Under the circumstances we think the government's position is without merit. The testimony plainly indicates that Rackler took the cotton to the gin with the knowledge that he would be paid for his harvesting either by Marion or the gin before the gin released the cotton or its proceeds to Marion. To this extent the gin's possession was possession for Rackler. If

---

1. Furthermore, since the gin and Rackler both furnished services in the ordinary course of their business, it appears that under Texas law their liens would take priority over an earlier perfected security interest. Tex.Bus. and Comm. Code § 9.310, V.T.C.A.

Rackler had retained the personal possession which the government alleges the statute requires, the cotton would have been completely destroyed and Rackler would have rendered his security valueless in the attempt to protect his priority. We do not think Congress intended such an absurd result. The purpose of the superpriority provision was to protect the improver and thereby encourage the improvement of property in order to increase the value of the federal tax lien. This purpose would be completely defeated in every case in which the improvement requires the skill or services of more than one person if continuous personal possession were required of *each* improver. In circumstances where the improvement requires a *chain* of improvers, we think the possession of one is the possession of all so long as those in the chain intend to withhold the property from the owner until the improvement charges against the property are satisfied. We therefore hold that Rackler, through the gin, had continuous possession of the cotton as required by § 6323(b) (5).

 The government also argues that the gin relinquished its possession when it delivered the bagged cotton to a warehouse and accepted warehouse receipts in return. We conclude that this argument is without merit. It is well understood in commercial practice that possession of a negotiable warehouse receipt is constructive possession of the goods represented by that receipt and that delivery of the receipt is symbolic and legal delivery of the goods. Mims v. Hearon, Tex.Civ.App.1952, 248 S.W.2d 754; McLendon Hardware Co. v. J. A. Hill & Son, Tex.Civ.App.1920, 226 S.W. 825; Morris v. Burrows, Tex.Civ.App. 1915, 180 S.W. 1108. Possession of the warehouse receipt so controls the right to actual possession of the goods represented by the receipt that possession of the receipt is for most purposes equivalent to possession of the property. In the instant case it is plain that the warehouse was obligated according to the bailment contract to release the cot-

ton only upon presentation of the negotiable warehouse receipt. Tex.Bus. and Comm.Code § 7.403. Since the gin had actual possession of the warehouse receipts, the gin effectively controlled the possession of the cotton. The only practical difference between possession of the cotton and possession of the receipts representing the cotton was the physical situs of the cotton. Instead of being stored on the property belonging to the gin, it was stored, subject to the gin's order, on property belonging to the warehouse. Common sense dictates that Congress could not have intended to protect from the federal tax lien only those creditors who have physical facilities large enough to allow on-premise storage of goods; constructive possession of goods in storage must be sufficient under the continuous possession requirement of the Tax Lien Act. We therefore conclude that the gin's constructive possession of the cotton through its actual possession of the warehouse receipts was sufficient under the "continuous possession" requirement of § 6323(b) (5).

 The government's final argument is that neither Rackler nor the gin qualifies under the superpriority section because neither "repaired or improved" the cotton. In order to be entitled to superpriority under § 6323(b) (5) the lien under state law must secure the reasonable price of the repair or improvement of tangible personal property. The government concedes that the fees of Rackler and the gin were reasonable, but argues that both participated in the manufacturing or processing of raw materials rather than repair or improvement. We disagree. We think the "improvement" requirement means nothing more than that the lien claimant must add value to the property. Unquestionably both Rackler and the gin added much to the value of the crop growing in the Marions' field. Significantly the government witness admitted that the value of the crop was enhanced by the services of both Rackler and the gin. Moreover, we note that the Tax Lien

Act gives the Secretary authority to subordinate the federal tax lien to other creditors when the value of the tax lien will thereby be increased. 26 U.S.C.A. § 6325(d).[2] In recommending passage of the Act, the Senate Finance Committee mentioned the precise situation now before us as an example of the appropriate time to use the subordination procedure, commenting that the value of the tax lien would be increased "in the case of a crop which needs harvesting and without which the tax lien of the Government *has little or no value.*" S.Rep. No. 1708, 89th Cong., 2d Sess., 3 U.S.Code Cong. and Adm.News, p. 3737 (1966). (emphasis added.) We think it obvious, therefore, that Rackler and the gin both "improved" the cotton in question within the meaning of § 6323(b) (5).

■ In thus concluding that Rackler and the gin are entitled to the super-priority protection afforded by the Tax Lien Act, we are aware that the Act is susceptible of a different interpretation. The statute could possibly be read to deny any protection to the claimants in this case. Faced as we are, however, with the task of construing a relatively new statute having a remedial purpose, we feel justified in giving the statute a broad interpretation which will achieve that purpose. The fact that the instant case arises in the context of an agricultural setting rather than an industrial atmosphere does not render the priority law inapplicable. The statute was designed to protect the small businessman who operates informally, depending upon an oral agreement and his possession to enforce his claim for a reasonable fee for services which rendered the property

more valuable. He is not expected to check the tax lien notices before he proceeds to work.

Rackler and the gin both fall in this category. Neither even had an articulated contract for their services; both depended solely on the custom in the community. According to the testimony, the custom was so fixed that price was never even mentioned; everyone simply knew the price. The same was true regarding the time and methods of payment. It was precisely this sort of informal transaction which we think § 6323(b) (5) was designed to protect. The person involved, because of the informality of the transaction and well established custom, is unlikely to check the tax notices or obtain a written security agreement, but he does by custom retain control of the property until he is paid. When such a transaction—whether it be the repair of an automobile or the harvesting and ginning of cotton—increases the value of the property, we think Congress intended that the workers' security be protected against the federal tax lien. To hold otherwise would create injustice and hardship, a result *contrary* to the remedial purposes of the statute. We therefore reject the Commissioner's narrow interpretation and grant super-priority status to both Rackler and the gin.

## II.

The final issue involved in this appeal is the matter of counsel fees. The trial court awarded each claimant $500 for fees incurred at trial and ordered this amount paid out of the proceeds of the cotton. On appeal both have asked for

---

2. Section 6325(d) provides:

"(d) Subordination of lien.—Subject to such regulations as the Secretary or his delegate may prescribe, the Secretary or his delegate may issue a certificate of subordination of any lien imposed by this chapter upon any part of the property subject to such lien if—

(1) there is paid over to the Secretary or his delegate an amount equal to the amount of the lien or interest

to which the certificate subordinates the lien of the United States, or

(2) the Secretary or his delegate believes that the amount realizable by the United States from the property to which the certificate relates, or from any other property subject to the lien, will ultimately be increased by reason of the issuance of such certificate and that the ultimate collection of the tax liability will be facilitated by such subordination."

an additional award for expenses incurred on this appeal. Rackler and the gin apparently have a legitimate claim against Marion for attorneys' fees under Vernon's Ann.Tex.Rev.Civ.Stat. art. 2226.[3] The crucial question, however, is whether this claim may be satisfied out of the cotton or its proceeds in preference to the government's tax lien on that property.

The relevant section of the Tax Lien Act provides that if the federal tax lien is not valid against a competing lien, then the priority of the competing lien is extended to include attorney's fees incurred in collecting the obligation secured. 26 U.S.C.A. § 6323(e) (3).[4] Had Congress stopped at this point, both Rackler and the gin would be entitled to a priority for the attorneys' fees incurred in this suit because we have held that both have a valid lien superior to the federal tax lien. Congress, however, did not make the priority regarding attorney's fees as broad as the parties here seem to have assumed. The extension of the priority to include attorney's fees is limited to those cases in which the fee under local law has the same priority as the lien being enforced. Thus Rackler and the gin are entitled to receive their attorneys' fees out of the cotton proceeds in preference to the government's tax lien only if under Texas law a lienholder's priority is extended to include attorney's fees incurred in collecting the obligation.

We have found no case involving the extension of an equitable lien such as the one here involved to include attorney's fees. It is plain, however, that under Texas law the holder of a mechanic's lien is not entitled to have attorney's fees included in a foreclosure judgment unless the mechanic's lien contract specifically provides for attorney's fees. In the absence of such a contract for attorney's fees the creditor is entitled only to a personal judgment against the debtor since the lien securing the debt does not cover the attorney's fees. Diaz v. Trevino, Tex.Civ.App.1968, 430 S.W.2d 742; Wood v. Barnes, Tex.Civ. App.1967, 420 S.W.2d 425, writ ref'd n. r. e. In the present case there was no contract which included attorneys' fees in either claimant's equitable lien on the cotton proceeds. Perceiving no relevant distinction between the equitable lien here involved and the mechanic's lien, we conclude that the attorney's fees incurred by Rackler and the gin in this suit would not under Texas law be given the same priority as their liens. The attorneys' fees therefore do not qualify under 26 U.S.C.A. § 6323(e) (3) for a priority superior to the government's tax lien. The trial court thus erred in ordering that the attorneys' fees incurred by Rackler and the gin be paid

---

3. Article 2226 provides:

"Any person having a valid claim against a person or corporation for personal services rendered, labor done, material furnished, overcharges on freight or express, lost or damaged freight or express, or stock killed or injured, or suits founded upon a sworn account or accounts, may present the same to such person or corporation or to any duly authorized agent thereof; and if, at the expiration of thirty (30) days thereafter, the claim has not been paid or satisfied, and he should finally obtain judgment for any amount thereof as presented for payment to such person or corporation, he may also recover, in addition to his claim and costs, a reasonable amount as attorney's fees, if represented by an attorney."

4. Section 6323(e) (3) provides:

"(e) Priority of interest and expenses.—If the lien imposed by section 6321 is not valid as against a lien or security interest, the priority of such lien or security interest shall extend to—

* * * * *

(3) the reasonable expenses, including reasonable compensation for attorneys, actually incurred in collection or enforcing the obligation secured,

* * * * *

to the extent that, under local law, any such item has the same priority as the lien or security interest to which it relates."

out of the cotton or its proceeds, and to this extent the judgment below must be reversed.

This is not to say, however, that Rackler and the gin are not entitled to a judgment for attorneys' fees. They may well .be entitled to a personal judgment against the Marions for such fees under the provisions of Tex.Rev.Civ.Stat.Ann. art. 2226. Since the record is unclear as to whether the requirements of that section were met, we must remand to the trial court for a determination of this issue. The court on remand may also consider what additional amount, if any, should be awarded for counsel fees incurred as a result of this appeal.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.